19 365
47 359
19 365
49 380
19 365
52 347
53 139
19 365
54 724
19 365
56 115
19 365
f58 128
19 365
62 243

---

## WURTS' EXECUTORS *vs.* PAGE and others.

1. Testator gave his estate to trustees for the use of his eight children, and the two children of his deceased daughter, and directed the proceeds of it to be invested for their benefit. He directed that the shares of his daughters should be held in trust for their sole use, not subject to the control or debts of their husbands, and the annual income to be paid on their own receipts ; that a specified part of the principal should be paid to each on her marriage; that a specified part of the share of each son should be paid to him at twenty-one, and the residue at twenty-two ; and that in case of the death of any child without issue, the share of such child should merge in the general fund. It was *held*—

*First.* That the gift to the daughters was absolute, subject to be defeated upon her dying without issue at her death ; that the share of a daughter who had died leaving children, went to her personal representative, and the share of a daughter, who had died without issue, merged in the estate ; and that the share of a daughter who is still living and has issue, was not freed from the limitation over by the birth of a child, but must remain in the hands of the executors until her death, until which it is possible that she may die without issue.

*Second.* That with regard to the shares of the sons, the limitation over must be construed to mean dying without issue, before the share is payable ; and, therefore, the share of a son who died after twenty-two and before his share was paid, goes to his representatives, and does not merge in the estate.

2 H *

2. Where a testator gives all his real and personal estate to his executors in trust for his children, and directs them to invest the proceeds for their benefit, either jointly or the share of each for his benefit, and directs the share of each to be *paid* over to them in a manner specified, it will be held that he contemplated and directed an out and out conversion of his lands into money before distribution, although there is no positive direction to sell the realty at any specified time, but the executors are only authorized and empowered to sell any part of the real estate at any time they may deem it advisable; and the share of each at his death, will, for purposes of succession, be considered personalty, although not actually converted.

This case was argued upon bill and answers.

*Mr. Carpenter* and *Mr. Bradley,* for complainants.

*Mr. Browning* and *Mr. C. Parker,* for defendants.

THE CHANCELLOR.

The questions in this cause, all relate to the construction of the will of William Wurts. The testator at his death, December 25th, 1858, resided in Trenton. His will was executed January 17th, 1856, and the codicil to it, upon which, however, no question arises, was executed on the 20th of November following.

The will gave and devised absolutely, in fee, all his real and personal estate to five trustees, who were made executors of the will, and to the survivors and survivor of them in trust, for the sole use, benefit, and advantage of his eight living children, share and share alike, and the two children of his deceased daughter, Caroline, one full share between them. He directs his trustees to invest the proceeds of his estate, after debts are paid, as a joint fund for the benefit of his heirs, with power to invest for each separately; the income during the minority of each child to be applied to their education and expenses, and any surplus to accumulate for their benefit respectively.

He then directed the sum of $3000 to be paid to each of his three sons, and to his grandson, William White, as they respectively attained the age of twenty-one years,

and the balance of their portions as they attained the age of twenty-two years respectively. The portions of his five daughters he directed to be held by his trustees, and the survivor of them, in trust, for the sole use and benefit of his said daughters, and that they should not be in the power of, or subject to the debts, control, or management of their husbands; this to apply to those then married, and to those who should become married. And he directed that the receipt of any daughter for her portion of the annual income or profits, under her own hand, should be a good discharge, notwithstanding her present or future coverture.

He then directed as follows: "In case of the decease of any of my said children without issue, the share or shares of such so dying, is to be merged in the general fund, and to be divided as above directed among my said heirs, and subject to the aforesaid conditions and restrictions. In case of the decease of either of my grandchildren above named, W. W. White and Ella White, without issue, his or her portion to go to the survivor, subject in all respects to the foregoing restrictions and conditions in regard to each. In case of the decease of both of my said grandchildren without issue, and their father, John R. White, surviving them, then I do order and direct that the income of their portion shall be paid to the said J. R. White, during his natural life, and on his decease, the share to pass into the general fund of my estate, for the joint and equal benefit of my heirs, as above directed."

He directed that the charges made by him for advances or outfits to any child, should be deducted from the share of such child; but in his codicil, he directs that no deduction shall be made for advances, except $4000 to his daughters Caroline and Anna. He authorizes his executors to loan on interest, to his son-in-law, Charles Wurts, any part of his estate that might " *be coming or payable to* " his daughter, Anna Wurts, (the wife of Charles); " the object being to preserve such sum as part of the trust fund for the benefit of his said daughter and her heirs."

He required that his three younger daughters, who, with

his three sons, the children of his second wife, were entitled, on arriving at full age, to receive certain property by virtue of the marriage settlement of their deceased mother, should convey that property to a trustee, to be held under the same restrictions as the property given by his will. If either of them did not so convey her property received under that marriage settlement, she should not receive any income from her part of the testator's estate, but her share should be held by the trustees for the use of the children of such daughter, and if she died without issue, was to be merged in the general fund of his estate. He did not require any such conveyance of their mother's estate by his three sons, who took the same right under her marriage settlement. He authorized his executors to advance out of her portion, $3000 to each of his three younger daughters upon her marriage. And he authorized and empowered his executors, in case it should at any time be deemed advisable by them, to sell and convey any part of his real estate.

Each of the testator's three daughters by his second wife, upon her coming of age, conveyed the property secured to her by her mother's marriage settlement, to a trustee, as directed by the will. John Howard Wurts, one of the sons of the testator, died in April, 1862, aged twenty-three years, and intestate. The executors paid to each of the three sons of the testator, and to his grandson, his legacy of $3000, upon his coming of age; and paid the whole of the residue of their shares to the two surviving sons, and to the grandson, after their arriving at the age of twenty-two years, respectively. The share of the deceased son, except the $3000 so paid him, is still held by the executors.

Testator's daughter, Martha, was married to Charles L. Wurts, and died September 15th, 1859, without having had issue, leaving her husband surviving her. His daughter Isabella, married S. D. Page, and died March 23d, 1867, leaving her husband and three children surviving her. His daughter Elizabeth, married Z. Read, and has issue. His daughters Anna and Mary, are married; one has issue, the

other has not; and they and their husbands are still living. The executors paid to each of the three daughters not advanced, her outfit of $3000 upon her marriage, as directed by the will.

The testator left personal estate to the amount of about $200,000, and real estate in the states of New Jersey and Pennsylvania. All the real estate in New Jersey has been sold, and most of the real estate in Pennsylvania. All that was sold, except a small parcel that produced about $150, was sold before the death of John Howard Wurts. The residue of his share, and of the shares of the five daughters, and the share of the granddaughter, were separately invested by the executors and trustees, and are now held by them so invested, for the purposes of the will.

As to the share of Martha Wurts there can be no difficulty, and no question is raised. She died without having had issue, and her share merged in the estate; and as she died in the lifetime of John and Isabella, each of them became entitled to part of her share, which merged in the general fund, and was taken, like their own shares, subject to the restrictions in the will.

Four distinct questions are raised in this cause, upon the construction of this will. The first is raised by Samuel D. Page, the surviving husband and administrator of Isabella. In his answer as administrator, he claims that the gift to Isabella was not an estate for life, with remainder to her children, but was an absolute gift, subject to be defeated by her dying without issue living at her death; that as she died leaving issue, her estate was not defeated, and, by virtue of his marital rights, belongs to him; and, as her administrator, he is entitled to receive it from the complainants.

Against this claim, it is contended that the provision that the share of any child which may die without issue shall merge, creates a limitation over to the issue by implication.

It is not contended that a mere direction that a legacy given to A shall go over in case of dying without issue, will, by implication, at the death of A, give the legacy to his

issue, but only that it will do so if necessary to give effect to the intention manifested in other parts of the will. The case *Ex parte Rogers*, 2 *Madd.* 447 (576), decided by Sir Thomas Plumer, is relied on in favor of the implication ; and the opinion of Sir John Stuart, in *Dowling* v. *Dowling*, 1 *Eq. Cas.* (*E. L. R.*) 442, it is contended, supports that decision in a way that entitles it to be regarded as authority, although his decision was reversed by the Lords Justices on appeal. *S. C.*, 1 *Chan. Appeals* (*E. L. R.*) 612. Before this, the correctness of Sir Thomas Plumer's decision, in *Ex parte Rogers*, had been frequently questioned. I do not think that either the decision on appeal, in *Dowling* v. *Dowling*, or the remarks on *Ex parte Rogers*, in the intervening cases, impugn the correctness of the decision in that case, although they properly call in question the doctrine that seems to be maintained, that a gift over, on dying without issue, will give to the issue, by implication, the legacy upon the death of the life tenant. In *Ex parte Rogers*, the bequest in Mr. Dudley's will of £1000 to his niece Mary, was absolute. In his codicil, he recites that she had since indiscreetly married, and he meant to withdraw that legacy out of the power of her, or her husband, to dispose of it. He, therefore, directed his executors to place the said £1000 in the public funds, and pay her the dividends during her natural life ; and at her decease, without child or children, he directed the principal to go over. The intention of the will would have given it to her children at her death, unless she had disposed of it in her life. The object of the codicil and the effect of its provisions, were only to prevent her and her husband from disposing of it, to prevent her receiving more than the interest, and, on her death without children, to dispose of it himself; but there is nothing intended to change the original purpose, if she died leaving children. In *Ranelagh* v. *Ranelagh*, 12 *Beav.* 200, the gift was to the first taker for life only, and there was nothing to give it to the issue, but the bare implication. In *Addison* v. *Busk*, 14 *Beav.* 459, and 2 *De Gex, M. & G.* 810, the gift over was in case the first taker should die before

the testatrix, without issue. He died in her lifetime; it was a case of mere lapse, as there was nothing in the will but the bare implication to raise a bequest. In *Sparks* v. *Restal*, 24 *Beav.* 218, and *Neighbour* v. *Thurlow*, 28 *Beav.* 33, the gift to the first taker was expressly for life only, and there was nothing to support the gift to the issue, but the implication.

In *Dowling* v. *Dowling*, there was no absolute gift of the principal, no positive direction of any kind that testator's sons should have any interest beyond their respestive lives. The will directed the executors to invest the proceeds of his property; " the interest therefrom to be divided, half yearly, between my four sons above named; and at the decease of either, without lawful issue, such share revert to the remainder then living, their child or children." There was nothing here to create anything more than a life ; estate, in either of the sons. And the provision at the decease of any one, did not provide for his issue. The gift to them was founded on the implication only.

In the present case, the gift is to each of testator's children, absolutely. Did the first clause stand alone, each at the time fixed would take his or her share out and out, free from all limitations.

The first restriction in his will relates only to his daughters. It provides. that their shares shall, for their lives, be held by the executors, and the interest paid to each on her own receipt, free from the control of her husband. The next limitation is. in case either of his children shall die without issue. He limits it to the survivors in such case, but he provides for that case only. He does not limit it in case the child leaves issue at his or her death, but leaves it, as in the first clause, subject only to the provision that a daughter shall not receive the principal, or her husband the interest, during her life. The intent and object of the testator clearly expressed in the first clause of his will, and only partially interfered with by the subsequent provisions, will be carried out without the necessity of a gift over by implication. That intent

will be carried out by giving to each part of the will its plain, natural import, without putting on any part a limitation or condition which he has not placed there.   There is no provision of the will, or desire or intention which the testator has expressed, that will be violated by this construction.   It is reasonable for a father to take care that his daughter, during her life, shall be provided with an income sufficient for her support, beyond the control of her husband, without providing for possible grandchildren by preventing his daughter from disposing of it at her death as she may wish.   And it does not contravene any intention expressed in his will, that he should be willing, if the father of these grandchildren should survive their mother, that he who would have the control, and be responsible for the support of these grandchildren, should have the administration of their mother's property.   The probability may be, if this remote contingency had been presented to him to act upon, that he would have put the property beyond the power of the surviving son-in-law.   It is enough for me that he has given no direction.   In *Ex parte Rogers*, the testator declared it to be his intention to put the legacy beyond the control of his niece and her husband, and had declared his intention that the £1000 should go absolutely to his niece, and had only changed that intention in case she should die without a child; and, therefore, it was necessary to give effect to both his declared intentions, to hold that there was a gift over to her children, by implication.   I am of opinion, that this will gave to each daughter her share, absolutely, with the two restrictions, that during her life she should have the interest only, to her separate use, and that, if she died without issue, it should merge in the general fund.   The share of Isabella, therefore, is payable to the defendant, S. D. Page, as her administrator, to be administered according to the law of her domicil at the time of her death.

The second question is that raised by the answer of the defendants, Z. Read, and Elizabeth his wife, who have children, and who contend that dying without issue means dying

without *having had* issue, and therefore, upon issue born, the legacy to Mrs. Read became absolute, and that she is now entitled to the principal. This construction is not supported by the words of the will, or the settled construction given to them. They mean issue at the time of the death. The words without *having* children, have in one or two cases been held to mean without *having had* children, under the peculiar provisions with which they were surrounded. The strongest and perhaps the only case, is that of *Weakley* v. *Rugg,* 7 *Term. R.* 22. In that case the expression was, "die without having children." Justice Lawrence says, that the grammatical construction was, having children at the time of her death. But he and Lord Kenyon put the decision on the ground urged by counsel, that if she died leaving grandchildren whose parents were dead, these grandchildren would otherwise be left unprovided for. These words in this will clearly mean, without issue at the death of each child. The shares of the daughters must therefore be retained by the executors, and the share of any who die without issue at her death, will merge in the fund.

The third question raised in the argument, is as to the share of John Howard Wurts, who died at twenty-three years of age, without issue. Did this share vest in him absolutely, or was it subject to the limitation over, so as to merge in the fund, upon his dying without issue? I agree with the counsel for the complainants, that the solution of this question would be the same had his share been paid over to him in his lifetime.

No one can read the will without feeling an impression that the general intent of the testator was that his sons, after twenty-two years of age, should have the absolute control of their whole share, in the same manner as they and his three daughters had control of the advances of $3000 to be made to them. The words of the limitation over, are sufficient to control these advances, if they are held to control the residue not payable until the sons reach the prescribed age. The words in the limitation clause, "in case

of the decease of any of my children without issue," will admit of the interpretation, that they refer to the death of a child after his legacy is payable, or after it is actually paid over. But if the intention of the testator requires it, they will be construed to refer to the death of the child before he is entitled to his legacy. In this case, I am satisfied that the intention of the testator, apparent on the face of the will, requires the construction that these words mean decease before the legacies are payable. The decision of Chancellor Halsted, and of the Court of Errors, in the case of *Van Houten's ex'rs* v. *Pennington*, 4 *Halst. C. R.* 272 *and* 745, not only warrant but require this construction. In that case, the testator gave to his son all the residue of his property, real and personal, without fixing any time for it being paid over to him. But he directed his executors to rent his lands and keep his money at interest until his son should be twenty-one years of age, and then directed, " but if my son should die having no children, then my will is, and I do hereby dispose of my property in the following manner." His son died after he was twenty-one, without children. In that case, there was no direction that the residue should be paid to the son upon his arriving at twenty-one years of age, but the court say, that must be implied from the provisions of the will, and those words considered as supplied, and then the construction is considered clear. The opinion of the Court of Errors, delivered by Chief Justice Green, holds: " The devise over stands, not in opposition to the original devise, but to the event of the devisee's coming into possession." In this case, the will had expressly directed " that the shares of the sons should be paid over as they respectively attain the age of twenty-two years." And then the next provision that relates to the sons, is the limitation over in case of death. In this case, as in that, it must be put in opposition not to the original devise, but to the event of coming into possession. I think the rule in this state is settled, and that this case must be ruled by that decision. And without it, I should not hesitate to hold that it was the intention of the testator that

any share, which by the terms of the will was payable, should be the absolute property of the legatee, and not subject to the limitation over. This view requires that the share of John Howard Wurts should be paid to his administrator.

The fourth question raised, is as to the conversion of the real estate unsold, into personalty. The doctrine of equitable or notional conversion is well established. *Oberly* v. *Lerch*, 3 *C. E. Green* 346 *and* 575. Its application in this case is the question. Wherever a testator has positively *directed* his real estate to be sold and distributed as money, it will be considered for the purposes of succession as personal. But in this case, there is no such direction. The direction to sell is contained in the fourth item of the will, and simply *authorizes* and *empowers* his executors to sell any part of his real estate in case they should *at any time* deem it advisable. This is not a direction to convert, but, on the contrary, it is a seeming direction to let it remain as real estate, until it became advisable from time to time to sell it. If this were the only part of the will to guide us, the real property could not be considered as converted into personal property until actually sold. But the question of conversion is a question of intention; and the real question is, did the testator intend his lands should be converted into money at all events before distribution? In this case, it seems to me that the directions in other parts of the will show clearly that he did so intend. In the first place, in the first clause he says: " I do hereby order and direct that my said trustees shall *invest* the *proceeds* of my estate, after settlement and my just debts paid, as a joint and common fund for the benefit of my said heirs, or they may be separately invested for the benefit of each respectively, in their several proportions." The spirit of this whole direction shows that conversion was intended. It would be difficult to invest unsold lands, or to invest each share separately, if in undivided lands ; and no direction is given for division. And the subject to be invested is the *proceeds* of the estate, which implies a sale of the real estate.

Again, in the limitation over, the expression is, shall " be merged in the general *fund*." And in the direction to loan to Charles Wurts, he says his object is to preserve the loan as part of the *trust fund* created by his will. Again, he directs the portions of his sons and his grandson, *to be paid* to them when they respectively arrive at the age of twenty-two. All these directions show that he intended that his estate should be converted into money before it was distributed by his trustees; and they would be required to convert it into money before distribution, and to pay it over in that form. And the rule is well settled, that if the will requires the real estate to be converted into money at all events, notwithstanding the executors may have a discretion as to the time, it must be considered as converted into money from the death of the testator.