### STEPHENS' EXECUTORS vs. MILNOR and others.

1. A legacy to A, to be paid when he attains the age of twenty-one years, but coupled with the provision, that in case of his death "before he shall attain to twenty-one years of age, or before he shall become vested with said legacy," the legacy shall revert to testator's estate, vests equitably in the legatee, on the testator's death, subject to a liability to be devested by the legatee's death before he shall have attained the age of twenty-one years.

2. Under a provision so worded—*held*, that the clause, "before he shall become vested with said legacy," is but the expression of testator's understanding and intention that the legacy should not vest, absolutely, until the legatee attain the age of twenty-one years. If the words refer to the absolute, indefeasible vesting of the legacy, they are redundant merely.

3. A bequest of " an annuity or yearly sum of $200, to be paid yearly and every year, for fifteen years from and after my decease," is an annuity for years, and to be paid out of the income under the directions of the will.

4. A bequest of " the sum of $500, payable in sums of $100 yearly, is not an annuity, and is to be paid out of the estate.

5. Testator directed that his residuary real and personal estate should be held upon specified trusts, and the income thereof should be paid in certain shares, " after defraying the expenses incident to said estates, the taxes, repairs, *assessments*, and insurance thereof." *Held*, that assessments for municipal improvements, and not taxes merely, were intended, and that they must be paid out of the income.

Stephens' Executors *v.* Milnor.

6. Grading and flagging the sidewalks, and grading and paving the streets in front of the premises, and fencing the lots, (though the property constitutes the residuary real estate,) are included in a direction to pay the "expenses incident to the estate" out of the income, and must be so paid.

7. New roofing, new plumbing, and whatever is reasonably necessary to keep up the houses, is included under the head of repairs, and must be paid out of the income.

8. But additions to the houses, and adaptations of the premises to new uses, should be paid out of the residuary estate.

9. A direction to pay, after the death of a life tenant, her share of the income "to her children, or the legally constituted guardian of said children, or to any of such as shall at that time be minors," is a direction that payment be made to her children, or their legally constituted guardian, or the legally constituted guardian of any of such as shall be minors.

10. A bequest of a third part of the income of the residue of testator's estate to A and B, each to have equal parts thereof, during their respective natural lives, and "in case of the death of either of them without issue surviving, then the survivor of them to have the income of the whole said one-third part, during his or her natural life," does not lapse as to the share of either, by his death without issue, in testator's lifetime; the whole goes to the survivor.

11. Under a direction to settle up and fund the estate so far as practicable, to fund ordinarily signifies to capitalize with a view to the production of interest.

12. Where, by the will, a power of sale of specified portions of testator's real estate is given to his executors, but to be exercised only on a certain contingency, but, by the codicil, testator adds: "My will and wish *now is*," that my executors shall exercise a sound discretion as to the propriety of selling said real estate, &c., upon conference with parties disinterested therein, and *advise* that no sale thereof be made unless such contingency arise; the executors are authorized, though the contingency has not arisen, and never will arise, to sell the real estate so specified, which has proved to be wholly unproductive and very burdensome, eating up nearly half of the gross income of the whole residuary estate for repairs, taxes, and assessments, and altogether undesirable and unprofitable as an investment to be managed by trustees during a long period of time.

13. A power given to executors to change investments of personal estate, as may be thought most advantageous for the estate, will authorize the executors to dispose of an unproductive and constantly depreciating stock at less than par, though the testator expressed a wish that that stock should not be sold for less than par, unless thought necessary.

14. An income directed to be paid half yearly, authorized to be paid quarterly.

John H. Stephens, late of the city of Newark, in this state, by the third section of his will, dated January 24th, 1868, bequeathed as follows:

"I give and bequeath to my grandson, John Henry Stephens Washington, son of my daughter Eleanor, the sum of $5000, to be paid to him when he shall attain the age of twenty-one years; no interest shall be allowed on said sum so bequeathed, until said grandson shall attain to six years of age, from which time and until he shall attain to twenty-one years of age, I authorize my executors and trustees to pay so much of the net interest that may from time to time accrue from said sum of $5000, as may be needed for the comfortable support, maintenance and education of said grandson, and to invest the balance of said net interest, if any, for accumulation until he shall arrive of age, at which time the principal sum and said accumulations shall be paid to him. While my said daughter Eleanor lives, I direct that the interest aforesaid, or so much thereof as may be needed for the support, maintenance and education of said grandson, shall be paid to her for the purpose declared. And, in case of her death, I direct that the necessary bills incurred for said support, maintenance and education of said grandson, shall be paid, as far as said interest from said sum shall go, by my said executors and trustees upon proper vouchers presented therefor. In case of the death of said grandson, before he shall attain to twenty-one years of age, or before he shall become vested with said legacy, I direct that the said sum of $5000, herein bequeathed for his benefit, with the accumulations therefrom, if any, shall revert to my estate, and be distributed as herein declared with respect to the residue and remainder of my estate."

By the tenth section, he bequeaths as follows: "I give and bequeath to the rector, wardens and vestrymen of All Saints Memorial Church, in the Highlands of Navesink, an annuity or yearly sum of $200, to be paid to them yearly, and every year, for and during the period of fifteen years

from and after my decease. Said annuity not to be transferred or anticipated in any way whatever."

By the eleventh section, he gives and bequeaths to the Newark Orphans Asylum Association the sum of $500, payable in sums of $100 yearly, and without interest, commencing one year after his decease.

By the twelfth section, he bequeaths as follows : "In the name of my beloved wife, Lydia H. Stephens, now deceased, and as her legacy, I give and bequeath to the rector, wardens, and vestrymen of All Saints Memorial Church, in the Highlands of Navesink, an annuity or yearly sum of $300, to be paid to them yearly, and every year, for and during the period of fifteen years from and after my decease. Said annuity not to be transferred or anticipated in any way whatever."

The fifteenth section is as follows : "After the payment of my just debts, as is hereinbefore provided, I do order and direct my said executors and trustees to set apart so much of my real and personal estate as shall remain, and as shall be sufficient to constitute a fund, the income of which shall be appropriated to the payment of the annuities in this my will devised to be paid; the balance of the personal estate, if any, then to be applied to the payment of the specific legacies devised. If the said balance of personal estate shall be insufficient to pay the said legacies, then I do devise unto my said executors and trustees, in trust, nevertheless, so much of my real estate as may be necessary for that purpose, which I do order and direct them to sell and convey for that purpose; the parts of my real estate so to be sold, and the mode and manner of such sale, to be at the discretion of my said executors and trustees, except the parts in this my will specifically devised."

By the seventeenth section, he gives, devises, and bequeaths all the rest, residue, and remainder of his real and personal estates, whatsoever and wheresoever, and of which he shall die seized and possessed, unto his executors and the survivors and survivor of them, to have and to hold the same, in trust, nevertheless, to and for the purposes thereinafter declared, that is to say, to receive the rents, issues, income, and profits

thereof, and after defraying the expenses incident to said estates, the taxes, repairs, assessments, and insurance thereof, to pay, first, one-third to his daughter, Susan E. Milnor, during her natural life, and " after her death, to her children, or the legally constituted guardian of said children, or to any of such as shall at that time be minors, and upon the arriving of age of the youngest of said children, then to apportion to said children or their heirs, the one-third of the principal of said residue so held in trust by said executors and trustees, according to the law respecting intestate estates in the State of New Jersey," &c.; to pay, second, one-third of the rents, issues, income, and profits of the residue to his daughter, Eleanor P. Washington, during her natural life, and after her death to her children, upon a like provision, in like words as to payment to the children or their guardian ; and to pay, third, the remaining one-third part of the rents, issues, income, and profits of the said residue to his grandchildren, Mary Henrietta and William C. Smith, children of the testator's daughter, Frances Henrietta, each to have equal parts thereof, during their respective natural lives, with provision, that in case of the death of either of them, without issue surviving, the survivor of them should have the income of the whole of the said one-third part during her or his natural life; and should either of them die without leaving issue surviving, " then to apportion such share of said one-third of the principal of said residue so held in trust for their benefit, to the children of them respectively, or to the children of the survivor of them having issue," &c.

The nineteenth section is as follows : " I hereby authorize and empower my executors and trustees, and the survivor of them, to sell and convey any part of my real estate, except such parts as I have herein wished reserved from present sale, for the purpose of raising money, if necessary, to pay the legacies and annuities herein given, or any part thereof, if it should be thought advisable so to do, in preference to raising money by a disposal of personal securities, considered safe investments for the general purposes of my estate. I

also confer the same power upon my executors and trustees, with regard to the whole of my estate, except my homestead in Middletown, if it shall be deemed necessary, in order to make a final settlement or distribution of my estate among those to be finally benefited thereby. Also, to change the investments of my personal estate, from time to time, in such manner as may be thought most advantageous for my estate, preferring them to select bonds and mortgages in preference to investing in stocks, where their security is in any way doubtful."

By the twentieth section, he declared that it was his desire, and he did thereby direct, that his estate, so far as practicable, might be settled up and funded within five years from his decease.

The twenty-first section is as follows: "When it becomes necessary, or shall be deemed expedient by my executors and trustees, to dispose of real and personal estate, I advise and direct that the following, (specifying certain real estate, stocks, &c.,) "shall be first sold." He adds: "Should the wharf property known as the Stephens and Condit wharf property, comprising wharf and several factories, now owned in common by the heirs of Joel W. Condit, deceased, and myself, not be sold or divided during my lifetime—this interest being a large and important one of my estate—I direct and request strict attention, on the part of my executors and trustees, to its just and impartial partition. My stock in the Stephens and Condit Transportation Company is of large amount; my wish is, that it shall not be sold for less than par, unless thought necessary. I wish the following property, real and personal, to be retained as part of my funded estate: Stock in The Mechanics' National Bank; stock in The Newark City National Bank; bonds of the State of New Jersey; bonds of Essex county; stock of the Newark Gas Light Company; my present dwelling-house, No. 158 Broad street, and the houses and lots on either side of said dwelling-house; the lot No. 164 Broad street; the wharf known as Stephens' wharf; bonds and mortgages considered the best; the four brick houses in Centre street,

Newark; my stock in The Morris and Essex Railroad Company—until such time, at least, when it may bring a better price than at present."

On the 27th of January, 1869, the testator made and published a codicil of that date to his will.

The second section thereof is as follows: "In the third section of my said will, I have given to my grandson, John Henry Stephens Washington, son of my daughter Eleanor, the sum of $5000, and have directed, that in case of the death of the said grandson before he shall attain to twenty-one years of age, or before he shall become vested with said legacy, the said sum of $5000 therein bequeathed to his benefit, with the accumulations therefrom, if any, shall revert to my estate, and be distributed as is therein declared with respect to the residue and remainder of my estate. My will in respect to this legacy now is, that instead of the sum of $5000, I give and bequeath to him the sum of $6000; and in case my said grandson should die in manner aforesaid, that said legacy, now made $6000, shall go to the other children of my said daughter Eleanor, if any then shall survive my said grandson, and the interest paid for their benefit; and, finally, the principal, in the same manner, for the same purpose, with like determination therefor, as provided respecting the said legacy of $5000, in said section of said will."

By the fifth section, after reciting, that in the seventeenth section of the will no time was specified when the income from the residue of his estate therein mentioned, should be paid to the parties therein intended to be benefited, he directed that the said income should be paid said parties respectively in the manner therein provided, half-yearly.

The seventh section is as follows: "In the twenty-first section of my said will, I have designated certain portions of my real and personal estate to be first sold. My will and wish now is, that my said executors and trustees shall exercise a sound discretion as to the propriety of selling said real estate and stocks, upon conference with parties disinterested

therein, and advise that no sales thereof be made unless the exigencies of my estate shall require it to make provision for the legacies in said will bequeathed."

By the codicil he expressly confirmed the will, except as thereby altered.

The testator died on or about January 28th, 1870.

The executors and trustees filed their bill for the construction of the will, and for directions.

The cause was argued on final hearing, on the pleadings.

*Mr. Williamson,* for complainants.

*Mr. C. Parker,* for defendants, DeBary and wife.

The defendant, DeBary, is the husband of Mary Henrietta Smith, grandchild of the testator, John H. Stephens. They are brought in court by a bill filed for construction of testator's will upon various questions, chiefly, or at least most thoroughly, raised by the answer of Charles E. Milnor and wife. Of these questions in order.

1. The first question arises thus: By the sixteenth section of his will, testator devises all the residue of his estate to his executors in trust to receive its products, and after defraying charges, to pay one-third of such products to his grandchildren, the said Mary Henrietta and William C. Smith, children of his deceased daughter, Frances Henrietta, each to have equal parts during their respective natural lives, and in case of the death of either without issue surviving, then the survivor to have the income of the whole of this third part during her or his natural life.

If either die leaving issue surviving, then to apportion said one-third to the children of them respectively, or the children of the survivor, each to have equal parts, etc. If either die without issue surviving, then the whole one-third to go to the children of the survivor after the death of the parent. If both so died, then the whole one-third to go

over to the other two daughters; and finally to their issue or that of the survivor of them. William died before the testator, and with his full knowledge, and without issue.

Afterwards, a codicil was made altering the will in certain other parts, but confirming it expressly so far as not altered.

The questions are: Does Mrs. DeBary take the whole income of this one-third? Or does that legacy lapse? And if it does, where does this one-half of the one-third go?

We contend that Mrs. DeBary takes the share of income intended for her brother. This is clear, on principle and authority.

The intention of testator must govern, and if there were no codicil, the plain intent deducible from the will was to possess the survivor of the share of the child deceased without issue.

He had two intents: first, the benefit of both his grandchildren, if living; secondly, the benefit of the survivor, whichever it might be. Whether the survivorship occurred before or after his death, could make no difference in his intent. The survivorship only designated the individual to be benefited, and did so, just as much, if one died before the testator, as if afterwards.

Authority is abundant on this subject.

"Another exception to the rule of lapsing in consequence of one of the legatees dying before the testator, occurs when there is a limitation over of the *legacy to the survivors, generally;* or upon the death of any of them under the age of twenty-one. In such instances, it is settled that the limitation to survivors shall have effect during the continuance of the testator's life; so that in the first case, if a legatee tenant in common die before the division, or if in the second, the legatee die in the testator's lifetime, *before* attaining twenty-one, or the happening of the event upon which the limitation over is made to depend, the legacy will not lapse, but go to the survivors under the express provisions in the will." *Roper on Legacies* 489.

The case here falls under one or other of these descriptions.

It may be regarded as a legacy to the survivor of the two, generally ; or when the legatee has died in the testator's lifetime *before* having issue.

The cases are numerous. In England : *Northey* v. *Burbage, Prec. Ch.* 470 ; *Barker* v. *Giles,* 2 *P. Wms.* 280, 3 *Bro. P. C.* 104; *Smith* v. *Pybus,* 9 *Ves.* 566.

These as to the first class of cases. *Miller* v. *Warren,* 2 *Vern.* 207 ; *Ledsome* v. *Hickman,* 2 *Vern.* 611 ; *Perkins* v. *Micklethwaite,* 1 *P. W.* 274 ; *Willing* v. *Baine,* 3 *P. W.* 113 ; *Rheeder* v. *Ower,* 3 *Bro. C. C.* 240. In America : *Prescott* v. *Prescott,* 7 *Metc.* 141 ; *Billingsley* v. *Harris,* 17 *Ala.* 214; *Norris* v. *Beyea,* 15 *Barb.* 416, 3 *Kern.* 273 ; *Dunlap* v. *Dunlap,* 4 *Desaus,* 305. See also 1 *Metc.* 512 ; *Armstrong* v. *Armstrong,* 14 *B. Monroe* 333 ; *Mebane* v. *Womack,* 2 *Jones' Eq.* (*N. C.*) 293; *Redfield on Wills, Part* 2, *p.* 501, *pl.* 23, and cases in note 51.

Lapse occurs because there is no person living, at the death of the testator, when first the will speaks, who can take. But when the testator says that the suvivor of two shall have a legacy or an annuity, there *is* a survivor then, and he can take, if one of the parties originally sought to be benefited is then dead.

The codicil is a republication, and if made with knowledge of the death of the intended first taker, it is a clear expression of testator's will in favor of the survivor.

Could he be understood to give one-sixth when he says one-third ?

I forbear to discuss the point raised, as to where the interest of W. C. Smith goes in case of lapse ; holding that there is no lapse, such discussion is unnecessary. If there were lapse it would seem that what portion would belong to him would form part of the residue, and pass by the residuary devise.

2. As to the power of the executors to make sale of real estate.

The scheme of the will on this subject is this : After legacies, testator directs the setting apart of so much of his real and personal estate as shall remain, and as shall be sufficient

to constitute a fund, the income of which shall be appropriated to the payment of the annuities devised to be paid. The balance of the personal estate, if any, to be applied to the payment of the specific legacies devised. If the balance of the personal estate shall be insufficient to pay the legacies, then he devises "so much of his real estate as may be necessary for that purpose," which so much he orders and directs them to sell and convey for that purpose.

The power of sale is thus evidently limited to its being necessary in order to make up the deficiency of personal estate for the payment of legacies. But there is no deficiency of personal estate. On the contrary, it is very large. And it seems evident that the executors derive from the will, so far, no power of sale.

The only other paragraph in the will, upon which power to sell realty can be based, is the nineteenth. By this the executors are empowered to sell and convey any part of his real estate, except such part as should be expressly reserved from present sale, for the purpose of raising money, if necessary, to pay the legacies and annuities, or any part thereof, in preference to raising money by the disposition of personal securities considered safe investments for the general purposes of the estate. The force of the direction is no more than this: The executors are authorized to select the realty for sale instead of personalty, if the personalty they have is considered by them a better and safer investment. But the condition of sale is the same; it is, that it be necessary to pay the legacies and annuities, as already observed. No such necessity, in fact, exists.

The same paragraph contains a further power in these words: "I also confer the same power upon my executors and trustees, with regard to the whole of my real estate, except my homestead in Middletown, if it shall be deemed necessary in order to make a final settlement and distribution of my estate among those to be finally benefited thereby." Those that are to be "finally benefited thereby," are not persons of this generation. This branch of the authority, as to the sale

of real estate, can apply only in favor of the issue of the present beneficiaries, after the death of their parents, and when the estate is to be finally distributed.

The testator evidently aimed at keeping the property he left intact, with the expectation, doubtless, of its future increase in value.

By paragraph twenty-first, the testator gives advice as to property which should be first sold, including in it much real estate, but this in no wise alters the will in relation to the time or the purpose for which this sale shall be made. And the intent of the testator is strongly manifested upon this subject by the direction contained in paragraph twenty-first: " Should the wharf property," he says, " known as the Stephens and Condit wharf property, comprising wharf and several factories, now owned in common with the heirs of Joel W. Condit, deceased, and myself, not to be sold or divided during my lifetime—this interest being a large and important one to my estate—I direct and request strict attention on the part of my executors and trustees to its just and impartial *partition.*"

Even here, evidently, he wished no sale. The court cannot make the testator's will, and therefore it is respectfully submitted that the executors have no present discretion for the sale of the real estate. That it is important to all parties interested in the will that such sale shall be had; that it would probably increase the amount of the estate, and perhaps considerably, are reasons why the testator should have made his will differently, but will not justify the court in so construing it.

3. The intent of the testator being thus clear, that his executors should only sell real estate when the personal was found deficient for the payment of legacies, it seems clear that the taxes, repairs, assessments and insurance, mentioned in paragraph seventeen as expenses incident to said estates, are to be paid out of the rents, income, issues, and profits thereof.

This provision is plainly onerous to the present benefi-ciaries, who derive no benefit but income; but it is neverthe-less the testator's will. His words are, "that the executors shall receive the rents, issues, income, and profits." All these are words applicable to real estate. And after defraying the expenses incident to said estate, "the taxes, repairs, assess-ments, and insurance thereof," then to pay, etc. When the testator specifies assessments as well as taxes, he uses the word to signify assessments for benefits. He was a New-arker, and spoke in the language of the charter and ordi-nances of Newark.

It has been held in the case of The Foster Home *v.* The City of Newark, lately decided in the Court of Errors, that when these two words are thus used, the word assessments signifies charges for public improvements made for the benefit of real estate, and paid out of the lots specially benefited. New roofing, new plumbing, fencing, etc., are clearly within the word repairs.

Additions and alterations required to adapt buildings to different kinds of occupation are within the same word if liberally construed, and the construction of the will in such a matter should be liberal.

Such expenditure of money goes not only to the benefit of the estate and the legatees in remainder, but likewise to increase the income of the present beneficiaries.

4. The trustees should be required to exert their power of changing investments of personal estate, whenever securities are doubtful, pay no dividends or interest, or are depreciating in value, though the testator expresses a wish that the stock of the Stephens and Condit Company should not be sold for less than par; he himself says, unless thought necessary. And the facts stated in the answer would seem clearly to manifest that necessity.

5. The legacies to All Saints Church and the Newark Orphan Asylum would seem to be specific legacies, and paya-ble out of the estate.

6. The legacy to J. H. S. Washington, it is submitted, did not vest on the death of the testator, otherwise the last paragraph of section three would be entirely inexplicable. He says : " In case of the death of said grandson before he shall attain to twenty-one years of age, or before he shall become vested with the said legacy, I direct that the said sum of $5000 herein bequeathed for his benefit, with the accumulations therefrom, if any, shall revert to my estate, and be distributed as is herein declared with respect to the residue and remainder of my estate."

The words, " or before he shall become vested with said legacy," seem to explain those which immediately precede them. And though the word 'revert' is used, this connection shows that it does not mean return, but that the testator intended to say, that in case of lapse by his grandson's death before twenty-one, the legacy should fall into the residuum.

THE CHANCELLOR.

The first question submitted is, whether the legacy to John H. S. Washington, given by the third clause of the will, and increased in amount by the codicil, did not become vested in the legatee on the death of the testator.

The gift is immediate ; the payment is deferred until the donee shall have attained to the age of twenty-one years. No interest is to be allowed on the legacy until after the legatee shall have attained to the age of six years, and from that time, and until he shall attain to the age of twenty-one years, the executors and trustees are authorized to pay so much of the net interest that may from time to time accrue from the legacy, for the comfortable support, maintenance and education of the legatee, and to invest the balance of the net interest, if any, for accumulation, until he shall arrive at twenty-one, at which time the principal sum and its accumulations are to be paid over to him.

The legacy vested, or as it is sometimes expressed, vested equitably, in the legatee on the death of the testator. But it is liable to be devested by his death, before he shall have

attained to the age of twenty-one years. *Ward on Legacies* 182. The will provides, that in case of his death " before he shall attain to twenty-one years of age, or before he shall become vested with said legacy," the legacy with the accumulations therefrom, if any, shall " revert " to the testator's estate, and be distributed as in the will declared, with respect to the residue and remainder of the estate.

By the codicil the amount of the legacy is increased to $6000, and in case of the legatee's death before attaining to twenty-one years of age, the legacy is to go to the other children of the testator's daughter Eleanor, if any shall survive his grandson, the legatee, and " the interest is to be paid for their benefit, and finally the principal, in the same manner, and for the same purposes, with like determination therefor, as is provided respecting the legacy of $5000," in the third section of the will.

The legacy to John H. S. Washington is to be devested, in case he shall not attain his majority, and in that case it is to go to the other children of his mother, or any of them who shall then be living, and in default of any such children, then to go into the residuum of the estate.

The words " or before he shall become vested with said legacy," are clearly but the expression of the testator's understanding and intention, that the legacy should not vest absolutely, until the legatee should have attained the age of twenty-one years. But these words, whatever signification be imputed to them, are of no importance. The legacy vested at the death of the testator. The legatee is still alive, and therefore the contingency of his death, before the vesting of the legacy, is past. If they refer to the absolute indefeasible vesting of the legacy, they are redundant merely.

The gifts to All Saints Church are annuities for years. Such is the form of the bequests, and so they are termed by the testator, and he intended that they should be paid out of the income, and they are to be so paid, accordingly.

The bequest to the Newark Orphan Asylum is to be paid out of the estate. That is not an annuity, but a bequest of

a sum of money to be paid in instalments, running through five years.

The testator intended to provide for the payment of assessments for municipal improvements upon the real property in the residuum of his estate. He specifies assessments in addition to, and distinct from taxes. His language is, " taxes, repairs, assessments and insurance." He resided in the city of Newark, where most of his real property was located, and was familiar with its charter, and with the burdens to which the real estate in its limits was liable. Besides, his language, introductory to that specification, is " expenses incident to said estates," in which, assessments for municipal improvements are fairly included.

In a recent case in the Court of Errors and Appeals it was held that a provision contained in a society's charter, that their property should not be " subject to taxes or assessments," should not be understood to refer exclusively to the ordinary public taxes, but to include local assessments for municipal purposes. *City of Newark* v. *Protestant Foster Home Society.* March Term, 1873.

Under the head of repairs should be included new roofing, new plumbing, and whatever is reasonably necessary to keep up the house.

Grading and flagging the sidewalks, and grading and paving the streets in front of the premises, and fencing the lots, all these, though they are improvements of a permanent character, and go to the benefit of the estate and of those in remainder, are expenses incident to the real estate, and are included in the direction to pay the expenses incident to the estates, out of the rents, issues, income, and profits thereof.

Additions to the houses, and adaptations of premises to new uses are not fairly within the direction, and should be paid for out of the estate and not out of the income.

In the direction in the seventeenth section, to pay one-third of the net rents, issues, income, and profits to the testator's daughter, Susan E. Milnor, during her natural life, and after her death to her children, until the majority of the

youngest, the language of the will is "to her children or the legally constituted guardian of said children, or to any of such as shall, at that time, be minors."

It appears to me that the testator meant to direct that payment be made to the children or their legally constituted guardian, or the legally constituted guardian of any of such as shall be minors. And this applies to the like language subsequently used in the same section, in the direction to pay one-third to his daughter Eleanor during her life, and after her death to her children until the majority of the youngest.

The will gives the remaining third to the testator's grandchildren, Mary Henrietta Smith, and William C. Smith, each to have equal parts thereof, during their respective natural lives, and provides that, " in case of the death of either of them without issue surviving, then the survivor of them to have the income of the whole of said one-third part during his or her natural life." . William died in the testator's lifetime, and before the making of the codicil, and without isssue, leaving Mary Henrietta surviving. The testator makes no reference, in the codicil, to the fact of William's death, nor does he make any provision in regard to William's share of this third.

The making of the codicil was a republication of the will. The former expressly confirms the latter, except as altered thereby.

I think there can be no doubt that, although William died in the testator's lifetime, there was no lapse, but the entire third goes to his sister,. Mary Henrietta, who takes William's share, as survivor, under this provision of the will. There can be no doubt of the testator's intention. He meant that these two grandchildren should have the benefit of the third of the income of the residue, in their deceased mother's stead. And it is very evident that he intended, that in case of the death of either of them at any time, the other should have the whole. On adjudged cases and well settled principle, such is the construction. *Willing* v. *Baine*, 3 *P. W.*

113; *Smith* v. *Pybus*, 9 *Ves.* 566; *Norris* v. *Beyea*, 13 *N. Y.* 273; *Taylor* v. *Wendell*, 4 *Bradf. Sur. R.* 324; 2 *Redf. on Wills* 597; *Roper on Legacies* 489; *Ward on Legacies* 182.

It appears that it would be greatly to the interest of the estate that certain portions of the real property should be sold. These portions are of two classes: one wholly unproductive and very burdensome to the estate by reason of very heavy assessments for municipal improvements; the other, from its character, being wooden tenement houses in different parts of Newark, constantly requiring repairs and of uncertain income, and expensive in collection, altogether undesirable and unprofitable as an investment to be managed by trustees, especially during a long period of time. The objectionable character of these two classes of property is shown by the fact that out of a gross income of $54,244.74 from the residuary estate for the year 1871, $27,193.03 were expended for repairs, taxes, assessments, &c., in that year, leaving a balance of net income of only $27,051.71, one-half of the gross income being consumed in incidental expenses. And for the next year, 1872, out of a gross income of $63,198.92, for like expenses $25,881.29 were required, leaving a balance of $37,317.63.

The testator by the fifteenth section of the will, directed his executors and trustees, after payment of his debts, to set apart so much of his real and personal estate as should remain, and as should be sufficient to constitute a fund, the income of which should be appropriated to the payment of the annuities; the balance of the personal estate, if any, then to be applied to the payment of the specific legacies; and in case the balance of personal estate should be insufficient to pay the legacies, he devised to his executors and trustees, in trust, so much of his real estate as might be necessary for that purpose, and ordered and directed them to sell and convey it for that purpose, excepting the parts of his real estate specifically devised. The balance of personal estate has proved ample for the payment of those legacies.

By the nineteenth section, he authorizes and empowers his

executors and trustees, and the survivors and survivor of them, to sell and convey any part of his real estate, (except such parts as he has expressed a wish to have reserved from present sale,) for the purpose of raising money, if necessary, to pay the legacies and annuities, or any part thereof, if it should be thought advisable so to do, in preference to raising money by a disposal of personal securities, considered safe investments for the general purposes of his estate. The contingency here contemplated has not arisen, and will not arise, for the reason before given in the same connection. By the same section, he confers the power of sale, with regard to the whole of his real estate, except his homestead in Middletown, if it shall be deemed necessary, in order to make a final settlement and distribution of his estate among those to be finally benefited thereby. This power is referred to the final distribution of his estate, and is confined thereto.

By the twentieth section, he directs that his estate, so far as practicable, may be settled up and funded within five years from his decease. To fund, is ordinarily understood, in such a connection, to signify to capitalize with a view to the production of interest.

I think the testator contemplated a sale of at least part of his real estate under this direction. In the very next, the twenty-first section of the will, he says: "When it *becomes necessary, or shall be deemed expedient,* by my executors and trustees, to dispose of real or personal estate, I advise and direct that the following (specifying certain real estate and securities) shall be *first* sold." If it be conceded that the occasions, whether of necessity or expediency, here alluded to, are to be controlled by the preceding directions and limitations of the will, in connection with the grant of power to sell, contained in the fifteenth, nineteenth, and twenty-first sections, the power of sale as to this property directed to be first sold, is given by the codicil, which, in its seventh section, speaks on the subject as follows: "In the twenty-first section of my said will, I have designated certain portions of my real and personal estate to be first sold; my

will and wish *now* is, that my said executors and trustees shall exercise a sound discretion as to the propriety of selling said real estate and stocks, upon conference with parties disinterested therein, and *advise* that no sales therof be made unless the exigencies of my estate shall require it to make provision for the legacies in said will bequeathed." This is not a mere repetition of his direction contained in the twenty-first section of the will. It is more. Referring to that direction, he indicates a change of intention—" my will and wish *now* is;" and commits it to the sound discretion of his executors and trustees to sell the designated real estate and stocks, upon conference with disinterested parties, (of course as to the expediency of disposing of the property,) and advises (merely) against sale unless the exigencies of the estate require it for the payment of the legacies.

It appears to me, from this section of the codicil, to have been clearly his intention to clothe his executors and trustees with discretionary power to sell the property, designated in the twenty-first section of the will as to be first sold, and they are at liberty to sell the property accordingly.

The power given in the nineteenth section of the will, to change the investments of the personal estate, from time to time, in such manner as may be thought most advantageous for the estate, should be exercised in regard to all unproductive or depreciating securities, and it is the duty of the executors and trustees to dispose of the stock of the Stephens and Condit Transportation Company, which is constantly depreciating and wholly unproductive, at less than par, if the interest of the estate, in their judgment, demands.

There appears to be no good reason why the income which, in the fifth section of the codicil, the testator directs to be paid half-yearly, should not, under the present circumstances, be paid in quarter-yearly payments. It will be so ordered.