As to paragraph 5, it is argued that the trustees may never obtain a flattering offer for the "Social Register" from persons who will conduct it upon the same lines, and who can be relied on to maintain the standard established by the testator, or that such offer may not be obtained within a period of lives in being and twenty-one years thereafter, and that the trust is void as opposed to the rule against perpetuities, because the trustees are directed and charged with a positive obligation to conduct the "Social Register" unless and until offer of the kind described is obtained from persons described.
Before taking up this provision, I would observe that the will is divided into paragraphs apparently for the sole purpose of stating separately the various objects the testator had in mind, and that the order in which the paragraphs appear, is of no significance. For instances, had the will been drawn in orderly fashion, paragraph 7 would precede paragraph 6; paragraph 8 would precede paragraph 4 and paragraphs 9 and 11 precede paragraph 6, and so the arrangement and numbering of the separate paragraphs are of little, if any, assistance in ascertaining the testator's scheme of disposal of his estate, but the entire will must be read for the purpose of giving effect to his intentions.
By paragraph 4 the testator gives his entire residuary estate, including the "Social Register," to his executors and trustees in trust for certain purposes, and he then proceeds to set out those purposes in paragraphs which he numbered 5, 6, 7, 9 and 11. He prefaces paragraph 5 with the words, "I do will and direct and do make the following charges against the same [the entire residuary estate], and do impose upon my said trustees the following obligations." In ascertaining the meaning and intent of these words and of the words with respect to the "Social Register" which follow, paragraph 12 of the whole scheme of the will must be considered. *Page 144 
By paragraph 12 he appoints executors and trustees; authorizes and empowers them to sell real and personal property; directs and authorizes them to conduct the "Social Register" and all other business and affairs for the purpose of creating, providing for and maintaining the income necessary to pay the annuities and other charges created, imposes and provided for by paragraphs 5, 6, 7, 9 and 11.
The "Social Register" is an incorporated company in which the testator held the entire capital stock. The profits earned by the company in his lifetime made this stock of great value, and it forms a large part of the testator's residuary estate. He had established the business and evidently was proud of its financial success and of the position he believed it had attained among those who consider themselves socially prominent. He also believed that the stock would be sought after, and he was concerned that it should not pass into the hands of those who might not maintain what he deemed was a high-class social directory, and, with these thoughts in mind, he admonished his trustees not to dispose of the stock hastily, but to await a flattering offer, which means an adequate price, for the benefit of the objects of his bounty, and not to deal with speculators, but to endeavor to find purchasers who would carry on according to a standard which the trustees might believe to be the testator's standard.
The words which stand at the beginning of the paragraph numbered 5, and which the complainants maintain are mandatory words, in my judgment, refer to the whole trust estate and to the administration and disposition thereof under paragraphs 5, 6, 7, 9 and 11, and do not apply solely to the management of the "Social Register" business, or to the sale of the stock thereof, and, in determining their true import, consideration must be given to the disposition the testator intended to make of his residuary estate as disclosed by the whole will. I cannot believe that the testator intended that this stock should not be sold in case his trustees failed to find a purchaser who would answer, in all particulars, the description given by him, or that, failing to find such purchaser, he intended that his trustees should continue the business, perhaps, *Page 145 
with depreciating profits, until their deaths, and that thereafter other trustees would be appointed to succeed them as managers of the "Social Register," when he could not know who the succeeding trustees would be, or whether they could or would conduct the business along the lines laid out by him, or maintain the high standard he had set.
The stock may depreciate in value, and, after efforts have failed to meet the instructions of the testator, as given in paragraph 5, it certainly will not serve the intention of the testator that certain persons shall benefit by the income from and the proceeds of the sale of the stock, that the trustees shall hold it, if no purchaser can be found who will agree to conduct the business according to the testator's business method and standard. Paragraph 12 gives the trustees unrestricted power of sale of the stock, notwithstanding what the testator had previously said in paragraph 5, and it cannot be doubted that should the trustees sell the stock under such power of sale to any person at a proper price, the title transferred could not be questioned, for such limitations as paragraph 5 places on the trust cannot operate against a title emanating under a proper exercise of an absolute power of sale. Centenary Fund v. Lake,72 N.J. Eq. 808.
By paragraph 12 the trustees are directed and authorized to conduct the "Social Register" for the purpose of providing the income necessary to pay the annuities and other charges in the will. Not only this provision limits the time for the trustees to continue to hold the stock, but they cannot continue the trust beyond the period which must arrive for final distribution of the trust estate, and since that period will arrive at a time which does not offend the rule against perpetuities, the instructions and obligations imposed on the trustees cannot, at the most, amount to more than a prohibition against selling the stock before final distribution, in case no purchaser is found prior to that time who will satisfy the directions of the testator. If no such purchaser is found and the stock is not sold, it will vest in and pass to those entitled to receive the trust estate on final distribution. *Page 146 
In considering the meaning and intent of the directions with regard to the sale of this stock, I think the duty and liability of the trustees (which the law casts upon them) to the beneficiaries have a bearing. Under Comp. Stat. p. 2271 ¶ 34, the trustees would have the right, even had these directions been omitted from the will, to continue to hold the stock, and they would not be accountable for loss if they exercised good faith and reasonable discretion in continuing to hold it, but, notwithstanding the testator's directions, they cannot be relieved from liability for loss if they refuse a flattering offer from one who declines to agree to conduct the business upon the lines and at the standard established by the testator, after all reasonable efforts have failed to obtain a flattering offer from a purchaser who will so agree.
My conclusion is that the words the testator used at the beginning of paragraph 5, when applied to the stock of the "Social Register," and when considered in connection with the manner in which he disposed of the residuary estate, were employed in the sense of a request, a recommendation or advice and not as an order, direction or command (Stephens Executors
v. Milnor, 24 N.J. Eq. 358; Case v. Hasse, 83 N.J. Eq. 170), and that the will does not direct the trustees to hold this stock for a period which may be longer than lives in being and twenty-one years thereafter.
Coming now to consider paragraph 6. It is argued that an equitable conversion of the testator's real estate took place at the time of his death, and that the whole residuary estate held in trust must be considered as personalty, and that the rules concerning a bequest of income from personalty, when no disposition of the personalty itself is made, must be applied. The rule as to equitable or notional conversion of real estate into personalty is, that when a testator has given positive direction to his executor to sell his real estate and distribute the proceeds as money, or the provisions of the will require the executor to exercise his power of sale, the real estate will be considered as having been converted into money as of the date of the testator's death. If the executor is given merely an authority to sell in his discretion, the real estate *Page 147 
retains its character as land until it is actually sold, but, when sold, the proceeds thereof become personalty and pass as such. Wurts v. Page, 19 N.J. Eq. 365; Cook v. Cook, 20 N.J. Eq. 375; Keen v. Plume, 82 N.J. Eq. 526; Trenton Trust Co. v.Moore, 83 N.J. Eq. 584; affirmed, 84 N.J. Eq. 194; Aitken v.Sharp, 93 N.J. Eq. 336. Paragraph 4 of the will gives and devises the residue of the estate, "real, personal and mixed," in trust, and paragraph 12 authorizes and empowers the executors and trustees to sell and dispose of the same, and, in their discretion, to call for payment of and to sell and transfer all property and securities in which the estate may be invested. This is not a positive direction to sell, and the will contains no direction as to how the corpus of the residuary estate shall be divided. Until the time arrives for the trustees to pay over thecorpus, it cannot be said that the will requires the trustees to exercise their power of sale, and, when that time arrives, those entitled to receive the estate may elect to take the property in common, or the estate may be susceptible of actual division among them. My conclusion is that as none of the testator's real estate has been sold, it retains its character as real estate and must be considered as such.
The complainants attack the validity of the four subdivisions of paragraph 6, while certain of the defendants argue that these subdivisions must be held to include a bequest and devise of principal as well as income, because, there being no bequest or devise of the principal after the termination of the specific bequests, the testator must have intended to give to the beneficiaries designated an absolute estate in the corpus. The rule applicable is that where there is a bequest of income from real or personal estate, or from both, without limit of time, or gift over which can operate, it is a bequest of principal, if there be no expression in the will of a contrary intent. The rule applies whether the gift of income be direct or through the intervention of a trustee, and is not to be defeated because some duty in realizing assets and securing and paying the income is cast upon the trustees. Traphagen v. Levy, 45 N.J. Eq. 448;Passman v. Guarantee Trust Co., 57 *Page 148 N.J. Eq. 273; Frelinghuysen v. Frelinghuysen, 80 N.J. Eq. 484.
Subdivisions (a) and (c) of paragraph 6 are similar in their provisions, and direct that one-fourth portion of the income of the residuary estate be paid, respectively, to Josephine De Ronge and Annie Townsend Ashmore, in each case "for and during her natural life." These subdivisions expressly limit the period for the payment of income to these beneficiaries, and while there is no disposition made of the portions of the residuary estate from which such income is to be derived, they express the intention of the testator that the interest of these beneficiaries in his residuary estate shall not exceed a life interest in income. This is a valid gift of income for life to the beneficiaries named and is not invalid, because the will fails to make provision for the disposition of the corpus from which such income is derived. As to such corpus the testator died intestate, and the same will pass to his heirs-at-law and next of kin, the trustees holding it for those entitled.Skellinger v. Skellinger, 32 N.J. Eq. 659; Smith v. Smith,54 N.J. Eq. 1; affirmed, 55 N.J. Eq. 821; Camden Safe DepositCo. v. Guerin, 89 N.J. Eq. 556.
By subdivision (b) of paragraph 6 the testator directed his trustees to pay one-fourth portion of the income of his residuary estate annually to Natalie Wilmer Wood during her natural life, and upon her demise to pay said income annually to her heirs without limit as to time. The will makes no disposition of the portion of the residuary estate from which this income is to be derived. This provision expressly limits the period for the payment of income to Natalie Wilmer Wood, and amounts to a life interest in income to her, and, under the rule stated inTraphagen v. Levy, and the other cases above cited, an absolute bequest and devise of the corpus of the residuary estate producing such income to the heirs of the life tenant. The provision of this subdivision that, after the death of Natalie Wilmer Wood, the income shall be paid annually to her heirs, without limit of time, does not offend the rule against perpetuities, because the gift of income to such heirs carries with it the corpus, which vests immediately to such heirs. *Page 149 
By subdivision (d) of paragraph 6 the testator directed the trustees to pay one-fourth portion of his residuary estate to three persons named during their joint lives and to the survivor of them, and, after the death of the survivor, to pay such one-fourth portion of income to Charles K. Beekman, without limit of time. No disposition is made of the portion of the residuary estate from which this income is to be derived This provision amounts to a life interest in income, to the three beneficiaries first named and to the survivor of them, and, under the rule last mentioned, an absolute bequest and devise of the corpus of the residuary estate producing such income to Charles K. Beekman, which vests immediately in him.
Finally, it is argued that the provisions of paragraph 10, with reference to certain real estate which forms part of the residuary estate and which the Baltusrol Golf Club might desire to acquire, is void as against the rule concerning perpetuities. The reason for this objection is not clearly stated, but I assume it to be claimed that this paragraph gives the club a perpetual right to purchase this real estate, and that, the provision being void, the testator died intestate as to the real estate in question. If the paragraph is void for the reason stated, it would not affect the other paragraphs of the will (McGill v.Trust Co., 94 N.J. Eq. 657; affirmed, 96 N.J. Eq. 331), but would affect only the interest which the club might have thereunder. Under paragraph 4 this real estate falls into the testator's residuary estate, subject to the club's interest therein under paragraph 10, and, if the latter paragraph is void, the real estate will remain in the residuary estate. But I do not consider that paragraph 10 gives the club any interest or right in the real estate therein referred to, the words used being merely precatory words recommending that the club receive special consideration from the trustees, and, in case it should make an offer to purchase, be given favorable terms. It might be noted here that the club was made a defendant to this suit, and that it has not answered or set up any claim or right under the will. *Page 150