Whittaker *v.* Whittaker.

WESLEY E. WHITTAKER et al.

*v.*

JOHN H. WHITTAKER et al.

A testator gave to his wife, for life, the use of his residence, and requested his executors to pay all the taxes and cost of repairs thereon out of his estate. He also gave her, for life, the income of certain stocks, appraised at $114,000, with a contingent interest therein to his wife's niece, if she should survive his wife. He also gave a specific legacy to his sister and to each of his brothers, and gave to his executors a power of sale of his real estate. He then provided as follows: "After the decease of my said wife and niece, I give my estate to my lawful heirs, to be equally divided among them, share and share alike." Testator's real estate, including his residence, was valued at $27,000, and his personal estate at $280,000.—*Held,* that, by the clause above quoted, the testator intended that the enjoyment of the residue of his estate, principal and income, should be postponed until after the death of his wife and her niece.

Bill for construction of will. On final hearing on bill and answer.

*Mr. B. Gummere,* for complainant.

THE CHANCELLOR.

Albert J. Whittaker, deceased, late of Trenton, died March 28th, 1884. By his will, dated July 17th, 1883, after ordering

payment of his debts and funeral expenses, he gave to his wife the use and possession of his residence during her natural life, and directed that all the taxes and repairs thereof should be paid out of his estate. He also gave to her all his furniture, pictures, silverware, piano, and all other articles of use or ornament in his residence, and then gave to her, for life, in lieu of her dower, six hundred shares of the capital stock of the United New Jersey Railroad and Canal Company, then standing in his name, with full power and authority to collect and receive, to and for her own sole use and benefit, all dividends and interest declared thereon after his death, but without power to sell or transfer the stock; and he directed that the stock should not be sold, transferred or exchanged by his executors, or by any other person or persons, during the life of his wife, but that it should be left and remain standing in his name, upon the company's books, and the dividends thereon be paid to her alone, or to her order, and not to his executors. He requested her to pay to her niece, Emma Chambers, for the life of the latter, $600 per annum, out of the dividends and interest, and directed and required his executors, in case his wife should die before Emma Chambers, to retain sixty shares of the stock, and pay the interest thereon to the latter, for her life. He then gave a specific legacy to the oldest of his brothers who might survive him, and gave $1,000 apiece to two of his namesakes. He then gave $15,000 apiece to his two brothers, Wesley E. and John H., and to his sister, Ann W. Ellison, and $20,000 to his brother George R., stating, as his reason for giving a larger amount to George than to the others, that George had a large family to support. And he provided that the lawful child or children of any of those last-mentioned legatees (his brothers and sister) who might have died, should take the share of his, her or their deceased parent. He then authorized and empowered his executors to sell and convey his real estate at their discretion, except his residence, which he authorized them to sell after the decease of his wife. He then provided as follows:

" After the decease of my said wife and niece, I give my estate to my lawful heirs, to be divided equally among them, share and share alike; the law-

Whittaker *v.* Whittaker.

ful child or children of any of them who have died, to take the share of their deceased parents."

He then appointed his brothers Wesley and George executors.

The questions submitted are the following: Whether the testator, in the gift of his estate to his lawful heirs &c. after the death of his wife and her niece, intended to postpone until the death of those latter persons, the enjoyment of so much of the property as was not to be held for their benefit, and, if so, whether such postponement of enjoyment extends to the income as well as the *corpus*, or whether it affects the latter only, and whether, seeing that the executors are possessed of a mere power of sale of the real estate, the heirs-at-law of the testator are not now entitled to that property, subject to the use and enjoyment of the residence by the testator's widow, according to the provisions of the will.

The testator's real estate, at his death, consisted of unimproved land, valued at $15,000, and his residence, valued at $12,000. His personal estate, including the six hundred shares of the stock of the railroad and canal company, was appraised at $281,067.88. So that his property, altogether, was valued at $308,067.88. Deducting therefrom the special legacies, $70,000, the value of six hundred shares of the stock, $114,000, and the estimated value of the residence, $12,000, altogether $196,000, there is a residue of $112,067.88, including the estimated value, $15,000, of the unimproved real estate. Deducting that, there is left a residue of $96,067.88 of personal property.

That the testator did not intend that the residue remaining after deducting the special legacies and the six hundred shares of stock, should be distributed immediately, is very clear, for he provides that the taxes and the cost of insurance and repairs of his residence shall be paid, during his wife's lifetime, out of his estate; that is, that those expenditures shall be made out of that residue.

But, further, he bequeaths to his brothers and sister certain large sums of money, giving as a reason for bestowing $5,000 more upon George than upon any of the others, that George

had a large family to support. These gifts immediately precede the gift of his "estate," which, by its terms, is to take effect after the death of his wife and her niece. They make it quite clear that the testator intended to postpone the distribution of all of his estate, except what he had given away in special legacies or directed to be held for the benefit of his wife and her niece, until the death of both of those persons. It is not to be supposed that he would have given those legacies of specific amounts if he had contemplated that those legatees would receive nearly $100,000 more of personal property on the settlement of his estate soon after his death. Nor did he intend to die intestate of any part of his property. He supposed that, by his will, he had disposed of all of it. The use of the word "estate," in the residuary clause, is very significant. It is as comprehensive a term as he could have employed. He undoubtedly intended that all his property remaining after paying the debts and legacies and making provision for his wife and her niece, should be held by his executors and accumulated (of course they were to pay therefrom the taxes, insurance premiums and cost of repairs to his residence), until the death of both his wife and her niece, and that his residuary estate should then, but not until then, be divided. It follows that the persons who, at his death, were his heirs-at-law or next of kin, are not entitled to take now, as their property, that part of the estate which is not needed for the purpose of paying debts and legacies and providing for the widow and her niece, according to the will. Under a similar provision, it was so held in *Brearley* v. *Brearley, 1 Stock. 21.*

Nor are they entitled to the income thereof. The residuary gift in this case carries with it the intermediate income. And if the real and personal estates are blended in one gift, it is considered to denote an intention that both species of property shall be subject to the rule applicable to personalty. *2 Jar. on Wills (R. & T. ed.) 245, 246; Gibson* v. *Montfort, 1 Ves. Sr. 485; Genery* v. *Fitzgerald, Jac. 468; Glanvill* v. *Glanvill, 2 Mer. 38; Ackers* v. *Phipps, 3 Cl. & Fin. 665; Lachlan* v. *Reynolds, 9 Hare 796; Van Kleeck* v. *Reformed Dutch Church, 6 Paige 600.*

Whittaker *v.* Whittaker.

In this case the gift is of the testator's " estate," a general term including both real and personal property. Nor is the case of *Brearley* v. *Brearley, ubi supra,* at variance with the views above expressed. In that case the testator made a provision of both real and personal property for his wife, and gave her an annuity for life, to be paid by his executors, and then empowered the executors to sell the residue of his real estate and to rent it until sold, directing them to invest the proceeds of the sales of his real and personal estate and all moneys received by them from any other source, until such time as those proceeds or other moneys, or any part thereof, should be needed for the purpose of carrying into effect the provisions of the will. He then gave to his two children $500 apiece, to be paid by the executors out of the first moneys they should have in hand from his estate after paying his debts and funeral expenses, and providing for the bequest in favor of his wife. He then ordered that the residue of his personal estate remaining in the hands of his executors at the decease of his wife, and all his real estate which should remain unsold at the time of her decease, should be equally divided between his two children. The chancellor held that the children were not entitled to the surplus of the personal estate until after the death of the widow. He also held that as to the real estate, the executors had only a mere naked power of sale of so much of it as might be necessary to answer the specific purposes of the will, but had no interest in the land itself, and that the title thereto vested, on the testator's death, in the two children as his heirs-at-law, and that there being sufficient personal estate to pay debts, expenses and legacies, and provide for the annuity, the executors had no further power over the real estate, because the proceeds thereof could not be needed for any of the purposes of the will, and therefore that the real estate and the rents thereof received by the executors went to the children notwithstanding the provision of the residuary clause. The case was regarded as one of hardship to the two children if, under the circumstances, they were to be kept from any benefit of the estate except their legacies of $500 each until the death of the widow, their stepmother. The decision in their favor as to the real estate was

expressly based upon the non-necessity of any conversion of the land to answer any of the purposes of the will; and the view taken by the chancellor was that therefore the children were entitled to the rents and profits of the land, and, if so, then to the land itself, at once, the court giving no weight to the testamentary direction for division, at the widow's death, of the land which should then remain unsold.