In re estate of GEORGE G. HARDY.

[Argued June 29th, 1916.   Decided November 20th, 1916.]

A testator directed his executors to pay his sister $400 annually during the lifetime of his wife. After making other bequests, he gave the residue of his estate to his wife for life and at her death to his sisters in equal shares. He gave no direction to set aside a fund to produce the amount of the annual payments.—*Held*, that the annuity was charged on the general estate, *corpus* and income, not on income alone, and that it was proper for the executors, of whom the widow was one, with her assent, to pay the annual sum out of the *corpus* of the estate.

On appeal of George H. Lambert, surviving executor, from decree of the prerogative court.

George G. Hardy, by his will, after directing the payment of his debts and funeral expenses, gave legacies immediately payable, amounting to $2,200, and then provided as follows:

"I direct my executors to pay to my sister Clara J. Cook, the sum of four hundred dollars annually in equal quarterly payments on the first day of the months of January, April, July and October, respectively in each year, the said payments not to commence until one year after my decease and to continue during the lifetime of my wife and no longer, and if my said sister shall not be living at the time of my decease, then I direct my executors to pay said sums at the times aforesaid, to her daughter, Lilian L. Cook. In case my wife shall die before my said sister or her said daughter shall have received the sum of one thousand dollars in annuities, then I direct that a sum equal to the difference between the total annuities paid and the sum of one thousand dollars be paid to my said sister if she be then living, and if not then to her said daughter, and in case my said sister shall die after me and before my said wife then I direct said annuities to be paid to said Lilian L. Cook until the decease of my wife. In case both my said sister and her said daughter shall die before me then the above legacies to lapse and go into the residue of my estate."

He then gave legacies, amounting to $5,000, to be paid at the decease of his wife. He then provided as follows:

"All the residue of my estate, real and personal, I give, bequeath and devise to my wife, Charlotte C. Hardy, for her use for and during the

term of her natural life, and at her decease any and all of my estate then remaining to go to my said sisters, Chastina A. Duren and Clara J. Cook, in equal shares, and should either be then deceased, the representatives of such deceased sister to take her share."

The amount given to Clara J. Cook has been paid. The executors by their accounts charged these payments to the *corpus* of the estate, beginning with their final account as executors, in 1894, and continuing with their first account as trustees in 1904. No objection was made (although the residuary legatees were represented by counsel), until exceptions were filed in 1911 to the second account as trustees, by Chasie L. Philips, daughter of the then deceased sister of the testator, Chastina A. Duren. The judge of the Essex orphans court held that the $400 per annum given to Mrs. Cook should have been charged to the income of the estate, and he therefore surcharged the executors. Afterward he opened the account of 1904 in order to allow exceptions to be filed and surcharged the trustees on that account. Subsequently, the surviving trustee filed an account in 1914, and upon exceptions he also was surcharged. The decree on the last account surcharged the trustee with $7,500, being the sum of the surcharges on the accounts of 1904, 1911 and 1914. The prerogative court affirmed the Essex orphans court and the surviving trustee appealed.

*Mr. Alfred F. Skinner (Mr. Charles H. Stewart* on the brief), for the appellant.

*Mr. Ralph E. Lum (Mr. Egbert J. Tamblyn* on the brief), for the respondent.

The opinion of the court was delivered by

SWAYZE, J.

The real controversy in this case is between the life tenant of the residue and the remaindermen. The court below held that the gift to Mrs. Cook should be paid wholly out of the income of the residue; the appellant contends that it should be paid out

of the estate generally, thus reducing from year to year the life tenant's income by the amount of the income on the $400 paid Mrs. Cook, and, in effect, therefore, making it payable in part out of the *corpus*—in part out of the income. The argument to sustain the decree rests upon the theory that annuities must necessarily be paid out of income. *Stephens' Executors* v. *Milnor, 24 N. J. Eq. 358,* is relied on as authority. It is not in point. In that case the testator directed his executors and trustees to set apart so much of his real and personal estate as should be sufficient to constitute a fund, the income of which should be appropriated to the payment of the annuities; and there was a subsequent bequest of the residue. In this case there is no fund directed to be set aside to produce the amount of the annual payments. All that is given to Mrs. Cook is $400 per annum. The residue of the estate is given to the widow for life. This residue necessarily is what remains after paying the legacies immediately payable ($2,200) and the legacy or annuity to Mrs. Cook. It makes no difference by what name the gift to Mrs. Cook is called. The testator calls it in one place an annuity and in another place a legacy. The result is the same. All that can be deducted on this account, in order to ascertain the residue on which the widow is entitled to income, is the value of the legacy to Mrs. Cook. The courts below have deducted more; they have, in effect, deducted not only the payments directed to be made to Mrs. Cook, but a capital sum necessary to produce such an income forever. In other words, they have deducted not merely the present value of $400 per year, but its capitalized value. The difference is illustrated by the table adopted by the court of chancery (*Corbin's Rules 258*) showing the present value of one dollar per annum with interest at four per cent. At age fifty, for instance, $400 per annum is worth $5,143.32, little more than half the amount required to produce $400 per annum at four per cent. No matter what Mrs. Cook's age, her legacy could by no possibility be worth $10,000. The error has arisen from the failure to distinguish between an annual sum charged on the general estate and the income of a trust fund sufficient to produce the amount. Where, as in the

present case, the testator omits to direct that a fund be set apart to produce the amount needed, the legacy is chargeable on the general estate (*3 Pom. Eq. Jur. 1134*)—that is, on the whole estate, *corpus* and income, not on income alone. This rule is to the advantage of the annuitant, since she must be paid, whether there is any residue left or not, and cannot be limited to the income of the estate for the satisfaction of her annuity. So well settled is this that the only question raised in the books is whether the annuitant is limited to a satisfaction out of the income of a fund expressly created for the payment of the annuity. Ordinarily, where the annuity is given, as here, in general terms, the annuitant is not thus limited. *In re Mason (Jessel, M. R.), 47 L. J. Ch. 660.* The executors and trustees have followed the rule and paid this annuity out of general assets. In any event, the life tenant necessarily contributes to the payment. In the twenty years that elapsed between the account of 1894 and the account of 1914, the *corpus* was reduced $8,000, and the income of the life tenant was necessarily less by the income on that amount. The loss would increase as time went on; with a smaller estate, the principal might easily be exhausted and the widow left without income unless she had saved out of her interest in the earlier days to make good the gradually-wasting principal. No question is made in the authorities that the burden must be apportioned between life tenant and remaindermen—that is, between income and *corpus*.

In the English courts four different rules have been suggested for this apportionment. *Strac. Law Tr. Accts. 109*, a recent excellent English work. The third rule is the one adopted by the trustees in the present case. It has the authority of *Re Henry (1907), 1 Ch. 30; Re Bacon, 62 L. J. Ch. 445.* Mr. Strachan points out that it may work injustice to the life tenant and prefers the rule of *Re Perkins (1907), 2 Ch. 596*, by which there is calculated "what sum with simple interest to the day of payment would have met the particular installment, and charge that sum to capital, the balance to income." This rule is certainly more in harmony with the view expressed by Sir William Page Wood (afterward Lord Hatherley) in the

leading case of *Allhusen* v. *Whittell, L. R. 4 Eq. 295; 36 L. J. Ch. 929.* We need not now decide between these rules. It is enough that the method adopted by the trustees, of whom the widow herself was one, did no injustice to the remaindermen. The decrees of December 9th, 1914, and of April 9th, 1915, must be reversed. The decree of July 17th, 1913, on the account of 1911 is open to the same objection, but has not been appealed from. With the reversal of the decrees on the main question, it becomes unnecessary to pass on those parts of the decrees which provides for the payment of counsel fees out of the "funds to be added to the *corpus* of the estate."

Let the record be remitted for further proceeding in accordance with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER—12.