Henry Byrne, late of the county of Hudson, State of New Jersey, died on February 25th, 1928, leaving a last will and testament, dated January 23d 1926, which was admitted to probate in the Hudson county orphans court on March 23d 1928. In his will he named his son, Henry J. Byrne, and the Lincoln Trust Company of Jersey City to be the executors and trustees of his estate. On February 18th, 1929, the Lincoln Trust Company and the First National Bank of Jersey City consolidated. Thereafter, the bank succeeded the Trust Company as co-executor and co-trustee of the estate.
On April 9th, 1937, the bank, upon a petition filed by it with the Hudson county orphans court, sought to be, and was, discharged as co-trustee; and to the vacancy thus created, Herman Lipschitz and Henry J. Byrne, a nephew of decedent, were appointed.
The will makes provisions for the payment of annuities to decedent's widow, Annie Byrne, to his only child, Henry J. Byrne, and to his several nieces and nephews, and employes. The testator, at the time of his death, left real estate which was then assessed for $672,450. The appraised valuation of that real estate, as of the time of testator's death, was $933,250. The 1937 assessed value of the real property amounted to $697,500. The present market value of the same real estate is $431,550.
The market value of the personal property in the estate, as of the time of the testator's death, was $1,423,251.86. The present market value of the personal property in the estate is $63,345. The approximate net value of the real and personal property in the estate, as of the present time, is fixed at $536,277. (Exhibits 4 and 5.)
The present monthly income of the estate is approximately $4,656. It results from real estate rentals, and income on mortgages.
The bill seeks a construction of the will of the decedent, *Page 9 
and instructions with respect to the duties of the complainants thereunder. The parties have stipulated the facts herein.
The estate holds one hundred and seven parcels of real estate, forty-three of which are unimproved. Taxes due and unpaid amount to $91,000. Forty-four parcels of the one hundred and seven parcels are particularly burdensome. Sixteen of them are improved, and twenty-eight are unimproved. The sixteen improved parcels are assessed at $98,500, and have a present market value of $52,500. The gross monthly income received from these sixteen parcels amounts to $289, and past due taxes thereon amount to $16,973.73. The twenty-eight unimproved parcels are assessed for $70,000, and have a present market value of $37,700. The yearly gross income realized from these twenty-eight parcels amounts to $50, and past due taxes against them amount to $18,785.80. A large part of the realty has been sold for taxes.
The questions arising out of this suit for the construction of the testator's will, concerning which the advice and instructions of this court are sought, appear to be the following:
"1. Have the complainants, as trustees of the estate of Henry Byrne, deceased, the right to abandon such parcels of real property of the estate as in their best judgment are burdensome to the estate and unprofitable to carry?
"2. With respect to the properties of the estate which have been sold by the city of Jersey City for unpaid taxes, have the trustees the right to redeem such of those properties as in their best judgment ought to be redeemed, and abandon those which are unprofitable to redeem?
"3. Are the annuities mentioned in the testator's will payable out of income or corpus or both?
"4. If the annuities are payable only out of income, what happens to the annuities if the income of the estate is insufficient to pay them?
"5. On March 1, 1938, the testator's son, Henry J. Byrne, will attain the age of thirty-five years, at which time one-half of the principal of the estate passes to him under the provisions of sub-paragraph 9 of paragraph `Fourth' of the testator's will. *Page 10 
"Query: Is the share of the estate which passes to Henry J. Byrne on March 1st, 1938, burdened with the whole or any part of the annuities presently due and unpaid, or does the said share of the estate go to the said Henry J. Byrne free from the burden of annuities past due or to grow due in the future?
"6. Have the grandnephews and grandnieces of the testator mentioned in sub-paragraph 2 of paragraph `Fourth' of the testator's will any interest in this estate."
I shall consider, in their order, the questions sought to be determined.
Question No. 1. Paragraph 9 of the bill of complaint reads as follows:
"Many of the properties are badly in need of repair and renovation but the complainants have not sufficient funds on hand to undertake such work, nor have they sufficient assets, other than real estate, which could be converted into cash for this purpose. Complainants feel that it would be for the best interest of the estate to abandon some of the properties, particularly those on which the tax arrearages run into considerable money, and with respect to such properties the complainants desire the aid and instruction of this court in the premises."
Notwithstanding the fact that the estate finds itself carrying considerable real estate, which is unprofitable and burdensome, I feel that the court is wholly without authority to instruct the trustees to abandon such real estate. It appears that:
"At common law, while an incorporeal hereditament may be lost by abandonment, the principal is firmly established that perfect legal title to a corporeal hereditament cannot be abandoned, or lost by abandonment, operating alone, and dissociated from other acts or circumstances; and so it is frequently said that, so far as land is concerned, there can be an abandonment only in a case where the title is imperfect, or less than absolute. The doctrine of abandonment has, therefore, no application to a fee-simple; but inchoate rights and equitable rights in land may be abandoned, and so may mere possessory rights and rights acquired by user." 1 C.J. Secundum 13, 14 § 5(c). *Page 11 
The titles to the real estate are perfectly good, legal titles. To permit the application of the doctrine of abandonment to such titles, it has been held, would be, in effect, permitting the transfer of interest in land in a manner within the prohibition of the statute of frauds. W.F. Miller Co. v. Grussi (SupremeCourt of Errors, 1916), 90 Conn. 555; 98 Atl. Rep. 90.
Where an estate is encumbered with real estate of the character with which this estate is burdened, the proper course to pursue, under the circumstances, is to dispose of it by sale. Stephens'Executors v. Milnor, 24 N.J. Eq. 358 (at p. 375). While it is conceded that the will in the instant case confers an unrestricted power of sale, it is somewhat evident that the exercise of such power during the present depressed economic condition of the real estate market will be followed by unfavorable returns. The legislature must have had in mind a situation such as that which now confronts the executors and trustees of the decedent's estate, when it passed chapter 216, laws of 1928. That act empowers trustees to sell improved lands which do not render an income proportionate with the value of the lands. There is no present assurance of recovery in the realty market. Under the circumstances, to obstinately hold the unprofitable lands in the hope that the deficiencies of the present day will be supplied by the morrow, means but added expense in overhead, and a continued heavy financial burden. Therefore, the instruction to the executors and trustees is to endeavor to sell such real estate as can be sold, at the present available prices.
Question No. 2. Paragraph 10 of the bill of complaint reads:
"In many instances the time within which to redeem some of the properties of this estate which have been sold for unpaid taxes will soon expire, and with respect to such properties the complainants desire the aid and instruction of this court in the premises."
An answer to this second question can be furnished, in some measure, by what has just been said under the first question. It is to be observed that when the testator died *Page 12 
on February 25th, 1928, his real estate was assessed for $672,450, and appraised at $933,250 (Exhibit 2). For the year 1937 while the assessment was increased to $697,500 (Exhibit5), the present market values have been reduced to the sum of $431,550 (Exhibit 5). While the realty comprises one hundred and seven parcels owned by the decedent, seventy-five thereof were sold by the city of Jersey City for unpaid taxes, the city being the purchaser. Past due taxes on all of decedent's real estate amount to approximately $91,400. With the downward trend of values in real estate, the returns from the decedent's real property have radically declined; the result being that the income therefrom is insufficient to meet the assessed taxes and other charges incident to the realty's overhead.
The market value of the personal property remaining in the estate to-day, is approximately $63,345 (Exhibit 4). This value added to the present market value of the real estate of $431,550, makes the approximate net value of the whole estate $536,277 (paragraph 27 of agreed statement of facts).
The monthly, and the only income being received by the trustees, is approximately $4,656. This sum is derived from real estate rents and income on mortgages (paragraph 28, agreed statement of facts). The decedent's will requires the payment of annuities amounting to $40,800 per annum (paragraph 16, agreed statement of facts). The annuities now, in arrears, amount to $101,180.25 (paragraph 17, agreed statement of facts). In addition, the weekly payroll of employes of the estate, amounts to $240 (paragraph 18, agreed statement of facts). The present indebtedness of the estate amounts to $239,912.78 (paragraph 19, agreed statement of facts). The indebtedness is more than fifty per cent. of the value of the whole estate.
Confronted with this sad picture of mounting losses, increasing depreciation, and insufficient income, all apparently occasioned by unimproved and deteriorating realty, inclines me to the opinion that the trustees should undertake to redeem from the municipal tax sales, only those properties *Page 13 
which, in their sound judgment, prove most profitable to carry. Just how the trustees are going to finance such undertaking presents another problem. That problem may, in some degree, be solved by consulting section 29 of the Executors and Administrators act (2 Comp. Stat. p. 2268), where, under its provisions, a trustee is empowered to sell, or mortgage trust real estate for the purpose, among other things, of raising money to discharge tax liens. In addition, the trustees, under the terms of the will, are empowered to sell the real estate. This court on February 21st, 1935, by order, authorized them to mortgage the real estate for the purposes expressed therein. While they have ample power to sell, the court is not unmindful of the fact that the trustees, to do so, must go to an inactive and "dead" market, and there try to obtain a price for their premises. The court also realizes that to carry on the scheme, there may be difficulty in borrowing moneys on bond and mortgage, in view of the admitted weakened physical condition of some of the properties. In any event, the trustees will be empowered and authorized to raise cash either by sale of the real estate, or by mortgaging it. They, of course, shall be required to use their best endeavors and sound judgment in the effort.
Question No. 3. Paragraph 11 of the complaint reads as follows:
"In addition to the situation existing with respect to the real estate in this estate, complainants have also been unable, due to insufficient income collected and the difficulty of converting real estate into cash in the present market, to pay to the beneficiaries named in the testator's will the amount of their respective annuities as the same become due. The annuities presently payable under the will total $41,800 per annum, and at the present time arrearages amount to $81,930.75. The testator's will is silent as to what shall happen to said annuities in the event the income from the estate is insufficient to pay them and for this reason the complainants desire the aid and instruction of this court in the premises." *Page 14 
The allegations of this quoted paragraph require the ascertainment of what the intention of the testator was. An annuity is merely a succession of pecuniary legacies. ChemicalBank and Trust Co. v. Barnett, 114 N.J. Eq. 4. When an annuity is given simpliciter, that is, given to the annuitant without specifying its duration, it is for life. 3 Pom. Eq. Jur. (4thed.) § 1134. It is to be distinguished from income payable from a specified source. 3 C.J. 201 § 2B. This last citation states: "There is a distinction between an income and annuity; the former embraces only the net profits after deducting all necessary expenses and charges, and may be uncertain in amount; the latter is a fixed amount directed to be paid absolutely, and generally without contingency." See, also, Welsh v. Brown,43 N.J. Law 37, and Steelman v. Wheaton, 72 N.J. Eq. 626.
It is contended by the complainants that the annuities provided for in the decedent's estate, in effect, are general pecuniary legacies, or a succession of pecuniary legacies. It is settled that an annuity payable out of the general assets of an estate is a general legacy, governed by all the rules applicable to that type of legacy. Where the annuity is payable out of a designated fund, it is called a demonstrative legacy and it is governed by the rules regulating that species of legacies. 3 Pom. Eq. Jur.
(4th ed.) § 1134; In re Low, 103 N.J. Eq. 435; Chemical Bankand Trust Co. v. Barnett, supra; Quill v. Schlichter,121 N.J. Eq. 149.
An almost complete answer to the question here involved is supplied by the case of Taylor v. Gardiner (Mass.),6 N.E. Rep. 2d 357; 109 A.L.R. 714. In that case, the will provided for an annuity to be paid to Elizabeth K. Gardiner for the period of her life. It also provided that in certain contingencies calling for payments of principal to legatees, the trustee should retain a sufficient amount to enable him to make the annuity payment. No fund was set up to provide for the annuity nor was there any direction in the will that the annuity be paid out of income or corpus. The court held that the annuity was a charge upon income alone, and not upon principal if the income proved insufficient. There *Page 15 
is an old English case which also bears on the point under consideration — Baker v. Baker (1858), 6 H.L. Cas. 616.
In the Baker Case the court denied a charge on principal where the income proved insufficient. The testator directed his brother, as trustee, to invest a fund sufficient to produce two hundred pounds annually, which was to be paid to the testator's wife for the period of her life; upon her death, the annuity then was to be paid to the decedent's son, if any survived him, and in the absence of such, then to the decedent's brother and sister. The whole residue of the estate was insufficient to produce the annuity, and the master of the rolls decided that the annuitant was entitled to the full amount of her annuity, and ordered the trustee to use the corpus to pay the same. On intermediate appeal, this decision of the master of the rolls was upheld; but on further appeal to the House of Lords, that body reversed the decision. The latter court held that the widow was entitled only to the income from the fund (which would not produce the amount of her annuity); and from such income the widow had to repay the sums theretofore advanced to her out of the corpus. The court further decided that the question was not one between an annuitant and a residuary legatee, but rather one between a tenant for life and remainderman. Stephens' Executors v.Milnor, supra; Corwine v. Corwine, 24 N.J. Eq. 579; Merritt
v. Merritt, 48 N.J. Eq. 1.
In those cases where pecuniary legacies or annuities are bequeathed to certain individuals, and the residue is given to others, the courts hold that the annuitants, or general legatees, are entitled to their full annuities, or legacies; and for the payment thereof, they may resort to the corpus, if necessary.Chemical National Bank and Trust Co. v. Barnett, supra;Liberty Title and Trust Co. v. Stevens, 115 N.J. Eq. 506; In reHardy, 86 N.J. Eq. 405.
However, the instant case is distinguishable from these last mentioned cases. Where the principal from which annuities are payable is given as a separate and independent gift, and not as a residue, the inclination of the courts is to hold that it was the intention of the testator that the principal of *Page 16 
his estate should go to the person named in its integrity, and that, consequently, the annuitants can look only to income for their annuities. Taylor v. Gardiner, supra, and Baker v.Baker, supra.
All the circumstances in the instant case indicate an intention on the part of the testator that the corpus of his estate be paid to his son in its integrity — subject to the life estate of the decedent's widow in the residence, No. 41 Gifford avenue, Jersey City, hereinafter referred to — and that the annuitants should look to income only for the payment of their annuities. This conclusion finds support in the following factors to which counsel directed attention.
(1) The testator's will established a trust of the entire residue.
(2) In the same paragraph in which the trust is established and the annuities provided for, the testator directs his trustees to turn over to his son when he attains the age of thirty-five years "one-half of the principal" of his estate, the balance thereof to be held by the trustees and turned over to testator's son at the expiration of twenty years from the date of the testator's death; indicating clearly that the principal of his estate was to remain intact and not be appropriated to the payment of the annuities.
(3) The relationship between the annuitants named in the Byrne will and the testator's son is not that of general legatee and residuary legatee, but rather that of life tenant and remainderman. Hence, I believe the cases dealing with the satisfaction of annuities or general legacies out of the residue have no application to the instant situation.
I am convinced that paragraph fourth of the will created a vested remainder in the decedent's son, Henry J. Byrne — subject to the decedent's widow's life estate in the premises No. 41 Gifford avenue, Jersey City. "A remainder is a remnant of an estate in land dependent upon a particular prior estate created at the same time and by the same instrument and limited to arise immediately upon the determination of that estate, and not in abridgement of it." 4 Kent Com. 197. Also, see Aitken v.Scharp, 93 N.J. Eq. 336; *Page 17 Moore v. Rake, 26 N.J. Law 574; Kinkhead v. Ryan, 64 N.J. Eq. 454; affirmed, 65 N.J. Eq. 726; Voorhees v. Singer, 73 N.J. Eq. 532; Keen v. Plume, 82 N.J. Eq. 526.
A gift to the trustee for the benefit of a cestui que trust
is, in equity, deemed to be a gift to the cestui que trust as though it had been made directly. Neilson v. Bishop, 45 N.J. Eq. 473; Miller v. Worrall, 59 N.J. Eq. 134; Traverso v.Traverso, 99 N.J. Eq. 514; Miers v. Persons, 92 N.J. Eq. 17.
Carrying the application of the rule to a situation where we assume the death of all the beneficiaries, and that the decedent's son, Henry J. Byrne, had attained the age of thirty-five years, and the twenty years have elapsed after the death of the testator, the enjoyment of the entire estate then, unquestionably, would be absolute in the son, Henry J. Byrne.
The residue is a distinct separate trust fund wherein the decedent showed that it was his intention to turn over to his son, at certain times, the entire corpus, in its integrity. But if the testator intended annuities under sub-paragraphs 1 to 8, and the first sentence of paragraph 9, as defined in New Jersey, these alleged annuities would be payable, following the rule, at all events, to the extinction of the corpus. This procedure would amount to a bequest of a fee in the annuitants; and in view of the fact there is a vested remainder in Henry J. Byrne, the contention that a fee has been granted to the beneficiaries preceding his estate must fail. It amounts to limiting a fee upon a fee — an impossibility in the law. Kutschinski v. Sheffer,109 N.J. Eq. 659; Galante v. Silverstein, 98 N.J. Eq. 52;Henderson v. McGowan, 91 N.J. Eq. 359.
The estate that the beneficiaries take, must be something less than the fee, and since the enjoyment of the remainder becomes absolute in the decedent's son, Henry J. Byrne, as to one-half when he reaches the age of thirty-five years, and the other one-half twenty years after decedent's death, therefore, the estates of the beneficiaries must be limited to the income upon the entire estate until Henry J. Byrne reaches the age of thirty-five years, and upon one-half thereof until twenty years after decedent's death. *Page 18 
My conclusion is that the estates of the beneficiaries are estates for years, limited to the income upon testator's estate until Henry J. Byrne reaches the age of thirty-five years, and subject to the further limitation of one-half of the income of testator's estate between the time that the said Henry J. Byrne reaches the age of thirty-five years and the expiration of twenty years after the testator's death. The income, if insufficient to pay annuities, in full, should be pro-rated among the several annuitants. This would be in accord with the principles laid down in those cases dealing with abatement of legacies, or annuities, where there is a deficiency of assets. Titus' Adm'r v. Titus,26 N.J. Eq. 111; Chemical Bank and Trust Co. v. Barnett, supra;Quill v. Schlichter, supra.
Since the first sentence of sub-paragraph 9 creates an alleged annuity to the son, Henry J. Byrne, he, consequently, is governed by the same rules applying to the payments to the other beneficiaries. My conclusions are, in part, reached by a consideration of the assets of the decedent's estate at or about the time he made his will, January 23d 1926, and its condition when he died on February 28th, 1928. As above observed, his entire estate was appraised at $2,256,501.86 (paragraphs 22 and 25 of agreed statement of facts). The income from such estate at the rate of four per cent. would amount to $90,000, and at the rate of five per cent., in excess of $115,000. Four or five per cent. was a normal return on invested capital when the will was executed in 1926. The alleged annuities under the fourth paragraph of the will, aggregate $48,700 per annum. The majority of the alleged annuitants were nephews, and strangers to the testator. The normal income from decedent's estate would have been sufficient to pay the annuities. I feel that it would be no error in judgment to say that the testator intended to limit the annuities to the income, as it is fair to assume the estate produced ample at, or about, the time the testator made his will. It was a perfectly natural thing for the testator, with an income of $90,000 or $100,000 a year, to provide for his relations, outside of his immediate family. Under such circumstances, *Page 19 
it would seem inequitable for strangers to invade the corpus of the estate up to a point where it would practically wipe out the assets and thus deprive those who were nearest and dearest to the testator (his wife and son) of the estate which the decedent undoubtedly felt was ample for their wants and desires.
In this connection, 69 C.J. 102, states the rule to be:
"In the absence of an expressed intention to the contrary, in construing a will favor will be accorded to those beneficiaries who appear to be the natural or special objects of the testator's bounty. It will not be presumed that the testator intended to discriminate between the natural objects of his bounty, and a construction affecting equality, and the natural objects of the testator's bounty will be favored. Testamentary provisions for support are favored by law, and provisions for the support and education of dependent beneficiaries are to be liberally construed in favor of such beneficiaries. In construing an ambiguous will, in the absence of an expressed intention to the contrary, the court will favor the testator's children, and a provision for the support of the testator's children should receive the most favorable construction to accomplish the purpose intended."
And at page 104, it says:
"In determining the meaning of particular parts, the intention of the testator is to be determined from the will as a whole. This rule of construction is one of extremely frequent application, since, as has been well said, a testator in the preparation of his will cannot be required to incorporate all of its provisions in a single sentence, or so construct it that it will consist of but a single paragraph, and a will is to be so construed as to give effect, if possible, to all its provisions in the light of the circumstances surrounding its execution. The portions of an entire testamentary idea must be read together in order to ascertain the real intention of the testator."
Hudson Trust Co. v. Grant, 114 N.J. Eq. 130; Second NationalBank and Trust Co. v. Borden, 113 N.J. Eq. 378; Kutschinski v.Sheffer, supra; Carter v. Gray, 58 N.J. Eq. 411.
It is to be noted that the ninth sub-paragraph of paragraph fourth, disposes of the corpus. That is the last paragraph of the will. It is to be noted that the prior sub-paragraphs, 1 to 8, are directly repugnant to the provisions of sub-paragraph 9. Under those circumstances, the latter clause *Page 20 
of the will must prevail. Hendershot v. Shields, 42 N.J. Eq. 317; Rogers' Ex'rs v. Rogers, 49 N.J. Eq. 98; Jarm. Wills 472;Armstrong v. Crapo, Executor, 72 Iowa 604; 34 N.W. Rep. 437.
In Armstrong v. Crapo, Executor, supra, the will in that case provided for the payment of eight life annuities and then provided for a final distribution of the estate at the expiration of ten years after the testator's death. The question was — did the annuities cease at that time even though the will stated that they were payable for life? It was held the annuities ceased at the end of ten years, the court stating that there was a repugnancy between that provision of the will which granted the annuities for life and that provision of the will which provided for final distribution of the estate at the expiration of ten years after the testator's death, and that since the latter provision was the last expression in the testator's will, it prevailed. Moreover, the court noted that the annuities in that case were not by any specific provisions of the will made a charge on the real estate directed to be conveyed to the testator's heirs.
The grandnieces and grandnephews of the testator mentioned in sub-paragraph 2, paragraph fourth of the testator's will, are governed by the same rules as those which apply to the payments to their respective parents. One of the provisions of said sub-paragraph 2 of paragraph fourth, is that each one of the six children of Patrick J. Byrne, is entitled to the sum of $100 per month, and upon the death of anyone of the living children, the $100 a month which had been bequeathed to the deceased parent, is payable per stirpes to his children.
Unquestionably, the testator's widow, Annie Byrne, with her son, who was also the decedent's son, stood foremost in the decedent's considerate mind. They are the most natural objects of his bounty. The will reveals that the decedent specifically mentioned but one parcel of his real estate; and that was his residence, No. 41 Gifford avenue, Jersey City, New Jersey. As to that parcel of real estate, he gave direct instructions to his trustees and executors, that his wife, Annie *Page 21 
Byrne, be allowed to occupy that residence as long as she lived, free of rent, or other charges, or expenses; and without obligation to keep the premises in repair. That obligation he imposed upon his estate. It clearly appears from all the circumstances that it was one of the outstanding intentions of the testator to provide a home for his widow during the period of her lifetime. It is the instruction of this court to the executors and trustees that they redeem this property from the tax sale, and that they maintain it as the testator stated for the period of the lifetime of Annie Byrne, or for such time as she may choose to occupy it; and to this extent, the widow's life estate in No. 41 Gifford avenue, Jersey City, is a charge upon the entire corpus of the estate.
I shall advise an order containing instructions to the executors and trustees to conform with the findings herein expressed.