The bill seeks a construction of the will of Thomas Harkins, late of the City and County of Salem, New Jersey, who died on July 25th, 1934, and which will was on August 7th, 1934, duly admitted to probate by the surrogate of the County of Salem. All of the answering defendants except those represented by Mr. Kauffmann, join in the prayer of the bill for a construction of decedent's will. The defendants represented by Mr. Kauffmann have filed an answer in lieu of plea. A decree pro confesso has been entered against non-answering defendants. The facts have been stipulated. The following is a copy of the decedent's will:
"I Thomas Harkins, of Salem, New Jersey, hereby make, publish and declare this instrument as and for my last will and testament.
"First: — I give and bequeath unto The Salem Nat'l Bank and Trust Company of Salem, New Jersey, One Thousand Dollars, in trust, the income to be paid to The St. Mary's Church for the upkeep of my family's burial lots.
"Second: — I give, bequeath and devise unto The Salem Nat'l
Bank and Trust Company of Salem, New Jersey, all my property real, personal and/or mixed, in trust nevertheless, for the following purposes: To hold manage, control, rent, repair, invest and reinvest, collect income and such other powers as are usual in handling real estate, the income to be paid to my brother, Harkins Joseph _______ of Salem, with power and authority to sell and convey and give conveyances in law, at public or private sale as in its judgment seems fitting. I further authorize and empower said Trustee to sell any of my property, at its discretion, and to invest the proceeds.
"Third: — I direct my brother Joseph to provide for the maintenance, at his discretion, of my brothers, John Harkins and James Harkins, of Salem, New Jersey, and also to provide for their proper burial.
"Fourth: — In the event that my my brother dies, I direct that Six Thousand Dollars be held in trust by The Salem Natl
Bank Trust Company, the income to be paid to Mary Harkins, wife of Joseph Harkins, for and during her natural life, and after her death, the income from the said six Thousand Dollars, shall be paid to my brother Daniel, of Penn's Grove, New Jersey, for the term of his natural life. Upon the death of Daniel Harkins, said income shall be paid for life to my sister, Mary Maguire Haney, now of St. Louis. Upon the death of Mary Maguire Haney, One Thousand Dollars to my niece, Anna Harkins Dandrow, Plattsburg, New York, absolutely is bequeathed.
"Fifth: — All the rest, residue and remainder of my estate, left at the time of the death of my sister, Mary, shall be divided share and *Page 85 
between share alike/_______ Daniel Harkins, Jr., Florence Harkins and Catherine Harkins.
"Sixth: — I give and bequeath to Edward Griscom, Two Hundred Dollars and to boy employed by me named Stepler, One Hundred Dollars.
"Lastly: — I nominate and appoint Joseph Harkins, of Salem New Jersey and The Salem Nat'l Bank Trust Company, of Salem, the executors of this my last will and testament.
"In witness whereof I have hereunto set my hand and seal this twenty-second day of July, 1934.
"`Breslin' struck out in Item Second and `Harkins' interlined before signing.
THOS. HARKINS
"Signed, sealed, published and declared by the above named testator, Thomas Harkins, as and for his last will and testament in the presence of us who, at his request, in his presence and in the presence of each other, have hereunto subscribed our names as attesting witnesses thereto.
 M. JANET WIDDIFIELD, R.N. MARY SAUL, R.N."
The Salem National Bank and Trust Company duly qualified as executor and trustee under the above will. The trusts provided for in the first, second and fourth paragraphs of the will have been set up. Joseph Harkins, testator's brother, mentioned in the second paragraph of his will, is now dead, although he survived the testator and received the income from this estate up until the time of his death. His wife, Mary Harkins, and testator's brother Daniel, mentioned in the fourth paragraph of the will, are also dead. Testator's sister, Mary Maguire Haney, is still living and is a party to this proceeding. Testator's brothers John and James, mentioned in the third paragraph of the will, are dead.
No controversy exists as to the trust mentioned in the first and third paragraphs of the will. The controversy concerns the rest, residue and remainder of the estate referred to in the "Fifth" paragraph thereof.
Counsel for the complainant poses the following questions:
First — Did decedent die intestate with respect to the residue and remainder of his estate?
Second — Does said remainder, upon the death of Joseph Harkins, John Harkins and James Harkins, constitute a *Page 86 
passive trust and should it be now distributed among the beneficiaries entitled thereto?
Counsel for the residuary legatees mentioned in paragraph "Fifth" of the will answers the first of these questions in the negative and the second in the affirmative, and insists that the rest, residue and remainder of the estate, except for the $6,000 held by the trustee under the provisions of the "Fourth" paragraph of the will, should now be paid to his clients. On the other hand, counsel for the other defendants, while admitting that the trusts established by the will, except those established by the "First" and "Fourth" paragraphs, are now passive, contend that the testator died intestate as to the corpus of the trust created by paragraph "Second" of the will except as to the rest, residue and remainder of the $6,000 trust provided for in paragraph "Fourth," and which admittedly comes out of the "Second" paragraph trust; and that such rest, residue and remainder, except as aforesaid, is now distributable amongst the heirs-at-law and next of kin of the testator. These defendants contend that paragraph "Fifth" of the will relates only to what shall remain of the $6,000 trust fund mentioned in paragraph "Fourth" of the will after the death of testator's sister, Mary Maguire Haney, and after the payment of the $1,000 legacy out of that fund to the testator's niece, Anna Harkins Dandrow.
In considering the issues here presented I shall adopt the language of Vice-Chancellor Sooy in Barrett v. Barrett,134 N.J. Eq. 138 (at p. 142), in which he states the basic principles which must govern my decision, as follows:
"Rather than take up in order the questions propounded by the bill, it will serve, for brevity, if the court first determines whether or not the testator died intestate as to any portion of his estate, and this question must be answered by a careful scrutiny of the terms of the will and the two codicils, having in mind at all times that the law abhors intestacy and that it is the duty of the court to construe the will, if possible, so that it will pass all that the testator possessed; * * * that the leaning will always be toward a construction to prevent intestacy; * * * that a testator is always presumed to have intended to dispose of his entire estate and if *Page 87 
such an intent can be found in the expressed provisions of the will the court, if possible, will so construe it; * * * that where there is a residuary clause in the will the courts have a strong disposition so to interpret it as to prevent an intestacy; * * * that the presumption against intestacy is particularly strong where the subject of the gift is the residuary estate; * * * that when the residue is given every presumption is to be made that the testator did not intend to die intestate; * * * that in the absence of something in the context in the circumstances of the case to exclude the natural import of the words of a will, the court is bound to give them effect according to their plain grammatical sense and accord to them their natural meaning."
In this admirable statement of the law, Vice-Chancellor Sooy has assembled numerous authorities supporting the propositions of law stated, but "for brevity" those citations are here omitted.
The province of the courts is to construe and not to make wills (Tyndale v. McLaughlin, 84 N.J. Eq. 652), and the will must be read from its four corners. The testator's intention is the law of wills and that intention is to be determined from the entire will (Bruce v. Bruce, 90 N.J. Eq. 573; Kutschinski v.Sheffer, 109 N.J. Eq. 659; Coffin v. Watson, 78 N.J. Eq. 307;Supp v. Second National Bank and Trust Co., 98 N.J. Eq. 242;Hogate v. Hogate, 132 N.J. Eq. 480), and all provisions of the will must be taken together so that it may stand in its entirety if possible. The First Methodist Church of Vineland v.Pennock, 130 N.J. Eq. 452.
A mere reading of the will here involved shows plainly, I think, that it was not prepared by one skilled in the use of technical legal language. Who the scrivener was does not appear, but he was certainly not a lawyer; and the letters "R.N." (Registered Nurse) after each of the witnesses' names suggest that the will was executed while the testator was on his death bed, only three days before his death. However, the scheme of the will is not difficult to discern. Testator's primary purpose was to provide for the support of his brothers Joseph, John and James. This was accomplished by leaving practically his entire estate in trust under the *Page 88 
terms of paragraph "Second" of the will. His secondary purpose was to provide for a limited income to the widow of his brother Joseph, for life, after Joseph's death, and he accordingly provided for a $6,000 trust fund in paragraph "Fourth" of his will. Obviously, that fund was to come from the corpus of the trust provided for in paragraph "Second" of the will, after the purpose of that trust had been satisfied. He then provided that after the death of Joseph's widow the income on that $6,000 should be paid to his brother Daniel for life, and upon his death to his sister Mary, for life; and upon her death $1,000 of thecorpus was to go to his niece, Anna Harkins Dandrow. The testator apparently had neither wife nor children of his own; but he had many relatives — brothers, sisters, nieces and nephews — and he chose from among them those whom he wished to favor with his bounty. That was his privilege, and thus far there is no difficulty in interpreting the will.
We now come to the controversial paragraph "Fifth" of the will which reads as follows:
"Fifth: — All the rest, residue and remainder of my estate, left at the time of the death of my sister, Mary, shall be divided share and share alike between Daniel Harkins, Jr., Florence Harkins and Catherine Harkins."
Except for the words "left at the time of the death of my sister, Mary," there could be no possible question as to the intention of the testator as expressed in this paragraph. He had not theretofore attempted to dispose of what remained of his estate after the trusts established by his will had spent themselves and the legacies been paid. As argued by counsel for the residuary legatees, without this quoted sentence, this paragraph would have been a perfectly good general residuary clause. The fact "that it does not appear at the end of the will does not prevent it from being a residuary clause." 3 Page onWills 80 § 987. At p. 79 of the same volume (section 986), it is said that, "A general residuary clause disposes of all theresiduum of testator's property; while a particular residuary clause disposes only of the residuum of certain specified property, or of property of a certain kind or class." *Page 89 
Tested by this rule it seems to me plain that the "Fifth" paragraph of the will was intended to be a general residuary clause and to dispose of all of the rest, residue and remainder of the testator's property after the purposes of the trusts had been satisfied and the legacies paid. And I so conclude. I agree with the argument of counsel for the residuary legatees that paragraph "Fifth" of the will is not a "particular residuary clause" for the reasons advanced by him in support of that argument and which may be summarized as follows: The position of this clause and its wording are inconsistent with an intention to make it a "particular" residuary clause; it is a separate and distinct paragraph and, therefore, is not limited in its application to any "certain specified property or of property of a certain kind or class;" by the use of the broad terms "all the rest, residue and remainder of my estate" it applies to both real and personal property, is not limited in its application, and evidences an intention to dispose of the entire residuary estate. More inclusive and comprehensive words than "all" and "estate" would be hard to find. By their use "the idea of generality is conveyed, and not particularity;" and had the testator intended this clause to be a particular residuary clause, applying only to the $5,000 undisposed of in paragraph "Fourth," he would undoubtedly have made this clause a part of paragraph "Fourth." His citation of Whittaker v. Whittaker, 40 N.J. Eq. 33, andClement v. Creveling, 82 N.J. Eq. 27; affirmed, 83 N.J. Eq. 318,
is quite apt. The reasoning of the Court of Errors and Appeals in the latter case, that the retention of a portion of the residuary estate involved the disposition of the portion not retained, is quite pertinent here. There are many parallels in those cases and this and if authority for my conclusion as to testator's intention is required, the cited cases supply it.
In my judgment the words "left at the time of the death of my sister, Mary" were not intended to qualify the preceding words of paragraph "Fifth," but were intended to make this clause inclusive of what should remain of the $6,000 trust fund after his sister's death. We can only surmise the purpose of the scrivener in using the quoted words; but he *Page 90 
may have thought that the entire residue of the estate had to be preserved until the purposes of the $6,000 trust were accomplished. If so, he was in error. However, I believe I have discovered and stated the testator's intention and properly construed this paragraph of the will. The only other possible construction of this paragraph, it seems to me, would be that testator intended that his entire estate should be held intact and not distributed until the $6,000 trust provided for in paragraph "Fourth" had spent itself. But this I think is an unreasonable construction because there is nothing to explain why he would want to prevent the immediate enjoyment of this legacy by his residuary legatees. The quoted language was designed only, I believe, to preserve the $6,000 trust fund until the event of his sister's death. However, if the clause should be construed as postponing the distribution of the entire residuary estate until his sister's death, then I think all of the residue of the estate, except the $6,000 trust fund, constitutes a passive trust and that at the option of the legatees it is immediately distributable to them.
I have not overlooked the arguments of counsel for the heirs and next of kin, as such, that a will should not be construed so as to disinherit the heirs-at-law or cut off from benefit any direct descendant of the testator, except in a plain case.McDonald v. Clermont, 107 N.J. Eq. 585; Higgins v. Mispeth,118 N.J. Eq. 575; Woodruff v. White, 78 N.J. Eq. 410; Rowley
v. Currie, 94 N.J. Eq. 606; Byrne v. Byrne, 123 N.J. Eq. 6.
But I believe every requirement of the law as expressed in these authorities is met by my interpretation and construction of this will. In this connection it should be borne in mind that there are in this case no direct descendants of the testator involved, all of the parties in interest being collaterals. There is nothing to indicate that the testator did not know of all of these collaterals, and it is quite apparent that he chose to select from them those upon whom he wished to bestow his bounty. This he had a perfect right to do.
My conclusion, therefore, is that the testator did not die intestate as to any portion of his property; that the three legatees named in the "Fifth" paragraph of the will are *Page 91 
entitled to immediate distribution of all of the residue of testator's estate except the $6,000 trust fund, and upon the death of his sister, Mary, $5,000 of that trust fund will also be distributable to these legatees, the remaining $1,000 to be disposed of as directed in paragraph "Fourth;" and that all of the testator's estate with the exception of the trust funds provided for in paragraph "First" and "Fourth" now constitute a passive trust, as to which the trustee has no active duties, and that it should, therefore, be forthwith distributed to the residuary legatees. I will advise a decree accordingly.