The bill of complaint in this case was filed for the purpose of obtaining a construction of the last will and testament of George W. Hawk, deceased. *Page 575 
George W. Hawk, a resident of Phillipsburg, Warren County, died August 18th, 1919, testate. He left him surviving his widow, Charlotte W. Hawk, and two children, Willis B. Hawk and Marshall Hawk.
Willis B. Hawk died April 12th, 1924, intestate, leaving him surviving his widow, Elsie Hawk (now Elsie Fitzgerald), and two children, Audrey Hawk (now Audrey C. Fields) and Elsie Hawk (now Elsie Orr).
Marshall Hawk died February 10th, 1944, testate, and his will was duly probated.
Charlotte W. Hawk died March 6th, 1947, testate, and her will was duly probated.
The pertinent parts of the will of George W. Hawk, which was dated August 28th, 1913, are as follows:
"3 — To my beloveth wife Charlotte Wolfe Hawk all rentals and income and use of all my Property on South Main Street town of Phillipsburg County of Warren State of New Jersey as long as she lives.
"4 — At her deth the children shall have share and share alike
"5 — Lot No. 704 on South Main St. town of Phillipsburg, State of New Jersey, I will to her absolutely to sell if she likes and use the money.
"6 — I also will my wife all household goods of all description. Book Accounts, horses and wagons.
"7 — I also give my wife all my stockes, and Bonds, and Bank Accounts, Personal Property of all kinds absolutely after the boys are paid the money as stated in No. 2."
The question involved is whether or not Marshall Hawk, at the time of his death, was a residuary legatee under the will.
The other question involved is whether the lot referred to in paragraph 5 of the will as lot No. 704 South Main Street, Phillipsburg, is the same lot which appeared at the time of testator's death as lot No. 704. At the time of testator's death a house existed as No. 704 and beyond that there appeared a plot of vacant land.
Charlotte W. Hawk, by her will, left the residue of her estate to the complainants.
The fourth clause of the will in question uses the words "at her deth the children shall have share and share alike." The will does not refer to the children as "his children" or *Page 576 
"my children." If the real estate in question did not vest in the children until after the death of the life tenant then Marshall Hawk, who predeceased the life tenant, would take no interest in the said real estate.
The rule is that when a gift takes effect at the happening of a given event, the gift does not vest until that event occurs. See69 Corp. Jur. 604.
In the case of Lippincott, Admx., v. Purtell et al., 98 N.J. Eq. 569,571, the court said:
"It is a well settled rule of construction that a gift of a legacy `at' or `when' or `after' a given event occurs vests only upon the happening of the event. Clement v. Creveling, 83 N.J. Eq. 318."
In the case of Whittaker v. Whittaker, 40 N.J. Eq. 33, 34,
the following language appeared in the will of the testator: "After the decease of my said wife and niece, I give my estate to my lawful heirs, to be divided equally among them, share and share alike;." The court held, in that case, the testator intended that the enjoyment of the residue of his estate, principal and income, should be postponed until after the death of the wife and niece. See, also, Lorillard v. Kent, 99 N.J. Eq. 509; Clark v. Union County Trust Co., 127 N.J. Eq. 221.
It appears that the children in this case should be considered as a class and as a general rule the class is to be determined as of the time the gift takes effect. See Thompson on Wills 377.
I have, therefore, concluded that Marshall Hawk was not seized of an interest in the real estate of George W. Hawk at the time of his death.
The next question to be determined is whether the lot referred to in the will as lot No. 704 was the lot on which a dwelling house had been erected before the death of testator or whether it was a vacant lot beyond the said house. The lot in question was devised to Charlotte W. Hawk under paragraph 5 of the will.
George W. Hawk purchased a large parcel of land on South Main Street on April 4th, 1884. At that time and subsequent thereto during the lifetime of the testator there existed on *Page 577 
the property a single house No. 690 and two double houses, one of which was No. 694-696 and No. 698-700. It appeared that the houses were numbered as such on the map of the Town Engineer of Phillipsburg, which map is dated 1906. Subsequent to the existence of these houses another double dwelling was constructed adjoining No. 698-700. The numbers were then changed, as appears by a map dated 1916, at which time the last house on said premises was numbered 702-704.
The tax collector, who had occupied such office for the last twenty years, testified concerning the records in his office and it appears from his testimony and the maps produced that there was no house known as No. 704 at the time the testator made his will and that the numbers had been changed sometime around 1915.
I have concluded from all the evidence in this case pertaining to the house and lot numbers that at the time the will was made, lot No. 704 was the vacant land along the street beyond the last dwelling house. At the time the change was made changing the last house number from 702 to 704 a dwelling house had been erected between two of the other houses which required a renumbering of the houses and lots. I have, therefore, concluded that lot No. 704, referred to in the will, is the vacant land which exists beyond the lots containing the houses.
I shall advise a decree in accordance with these views. *Page 578