28 N.J. Super. 536 (1953)
101 A.2d 90
GEORGIE R. ARMSTRONG, ELIZABETH A. OSBORNE AND F. WALLIS ARMSTRONG, JR., INDIVIDUALLY AND AS TRUSTEES OF THE ESTATE OF F. WALLIS ARMSTRONG, DECEASED, AND BURLINGTON COUNTY TRUST COMPANY, TRUSTEE OF THE ESTATE OF F. WALLIS ARMSTRONG, DECEASED, PLAINTIFFS,
v.
OLIVER E. HYDE, JR., COLLEEN HYDE,, BURLINGTON COUNTY HOSPITAL AND COOPER HOSPITAL, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 20, 1953.
*537 Mr. F. Morse Archer, Jr., for plaintiffs (Archer, Greiner, Hunter & Read, attorneys).
Mr. George M. Hillman for defendant Oliver E. Hyde, Jr.
HANEMAN, J.S.C.
Plaintiffs herein seek the construction of the will of F. Wallis Armstrong in connection with the following propounded question: May the trustee reimburse *538 Georgie R. Armstrong, the widow of the testator, to the extent of $43,000 for monies expended by her for the purchase or construction of a residence?
The facts in connection herewith are as follows:
F. Wallis Armstrong, late of the township of Moorestown, County of Burlington and State of New Jersey, died February 8, 1949, leaving a last will and testament which provided, in part, as follows:
"(a) My Trustees shall pay out of the net income from the whole of my residuary estate, all taxes, water rent, mortgage interest, if any, insurance premiums and generally all carrying charges and all costs incident to keeping in good order and repair and adequately insured the real estate occupied by me as my residence, including my lands, farm lands, buildings and appurtenances situate in the Township of Moorestown and Cinnaminson, Burlington County, New Jersey and at Nantucket, Nantucket County, Massachusetts, and any and all real estate acquired in lieu thereof under the terms hereinafter set forth in Subsection (b) of this Section THIRD.
(b) Subject to the provisions hereinabove set forth in Subsection (a), my Trustees shall hold as a separate trust for the benefit of my wife, Georgie R. Armstrong, all real estate occupied by me as my residences, including my lands, farm lands, buildings and appurtenances, situate in the Township of Moorestown and Cinnaminson, Burlington County, New Jersey, and at Nantucket, Nantucket County, Massachusetts, together with one-half of the balance of the principal of this my residuary Trust and thereupon:
1. My Trustees shall permit my wife, Georgie R. Armstrong, to occupy all or any part of the real estate described in Subsection (b) of this Section THIRD, free of all rent, for such time during her life as she may wish so to do, and if my wife should at any time desire any part or all of said real estate to be sold and should, in writing, request my Trustees to sell the same, my Trustees may sell and convey such real estate under the powers hereinafter conferred upon my Trustees (my wife joining in such conveyance to show her consent), and my Trustees shall, if my wife should so desire, purchase out of the proceeds of such sale any other real estate selected by her, with the approval of my Trustees, to be held under the provisions of this Paragraph 1, in lieu of the real estate sold as aforesaid; and my wife shall have the successive right to request my Trustees to sell any real estate occupied by her under the terms hereof and to purchase any other real estate for her use, and she shall have the right to occupy free of all rent, all real estate so successively purchased. In the event, by reason of any casualty, any payments are received on any insurance policies on any of said real estate, such payments may be used *539 to repair, restore or improve any real estate held or to be held by my Trustees under the terms of this Trust, or may be added to the principal of this Trust as my said wife may direct."
"FIFTH: My Executors and Trustees, in their respective capacities, shall have, in addition to the powers vested in fiduciaries by law, the following powers:
(a) To retain any investments and property being a part of my estate at my death for such length of time as my Executors or Trustees may deem proper, without liability by reason of such retention.
(b) To make such investments and reinvestments of principal and any accumulated income and in such proportions without limitation to what are known as legal investments as my Executors or Trustees in their sole discretion may consider proper, including but not being limited to holding cash balances and tangible personal property, investments in preferred and common stocks of corporations and investments in any common trust fund operated by any corporation acting as a fiduciary hereunder, it being my intent to give to my Executors and Trustees broad powers of investment.
(c) To purchase investments at a premium or at a discount, and to deduct such premiums from principal or income, as my Executors or Trustees, in their sole discretion, may deem proper, and to credit such discounts to principal.
(d) To participate fully in the management, liquidation, reorganization, consolidation, merger, or any other financial readjustment of any corporation or business, incorporated or unincorporated, in which my estate may be financially interested, and to exchange and accept cash or securities in connection therewith, and to exercise any option arising by reason of the ownership of securities or interest in any business, and generally do everything in and about the conduct and management of my estate and the investments and property held hereunder that an individual owner might do, and to vote any and all stock by proxy or otherwise at any or all corporate meetings.
(e) To cause the investments held hereunder from time to time, or any part thereof, to be registered in the name of my corporate Trustee or its nominee, or to hold said investments unregistered and in such form that they will pass by delivery.
(f) To sell (either at public or private sale), lease, mortgage, alter, develop, farm, repair, maintain, exchange or otherwise operate or dispose of any real or personal property a part of my estate at any time, for such prices and terms as may seem proper in the sole discretion of my Executors or Trustees without liability on the part of the purchasers to see to the application of the purchase money or consideration."
Testator and his widow were married in 1898, at which time he was earning $18 per week. Through his own efforts, ingenuity and intelligence the testator, imbued with an *540 ambition to succeed, became an outstanding operator of advertising accounts. Some forty years ago he commenced the construction of a home at Moorestown, referred to above in his will, which eventually cost in excess of $150,000. Prior to his retirement in 1938 there were employed in connection with this home three gardeners and four inside servants. Both testator and his wife, at the same time, had their own private chauffeurs. The widow, conceiving that the cost of the maintenance and operation of said residence would be unduly burdensome to the estate for the housing of herself, directed the trustees, in accordance with the terms of the said will, to sell said property. As quite frequently has happened in recent years, there was practically no market for an establishment of this size and they were finally obliged to sell for $22,000. The widow thereupon commenced the construction of a new residence for herself on seven acres of land personally owned by her. The cost of the residence, including such items as landscaping, sewerage, etc., was $73,459.94. The land upon which this residence was constructed was conservatively appraised at $7,000. The new home consists of a two-story, attic and basement, concrete block and stucco building with four large rooms and a large hall on the first floor, four rooms and two baths on the second floor, and a two-car garage with servants' quarters. The Nantucket residence referred to in the will, which is still owned by the estate, is appraised at $84,000.
Subsequent to the construction of this new house the widow conceived that she should be entitled under the will to have the trustees pay the entire construction costs. However, in a desire not to seem to burden the estate she has expressed a willingness to convey to the estate the seven acres of land above referred to, provided the estate will advance to her $43,000 in addition to the $22,000 received for the sale of the Moorestown home.
It therefore follows that for the total payment of $65,000 the trust estate would receive title to realty conservatively worth $80,000.
*541 It seems plain that testator intended that provision should be made for a home for his widow consistent with the manner in which she had been accustomed to live during his lifetime. Extrinsic evidence of circumstances, situation and surroundings of testator at the time the will was executed, so that the court may be placed in position of testator, as nearly as possible, and thus better comprehend the meaning and application of language used by him, may be adduced and considered by the court for this purpose. Such evidence may, of course, not be received for the purpose of imparting into a will an intention which is not there expressed. In re Armour, 11 N.J. 257 (1953).
The judicial interpretative function is to find the meaning of the testator as expressed in the language used, considered in the light of the attendant circumstances, and enforce it unless forbidden by positive rules of law or public policy. Dickerson v. Dickerson, 4 N.J. Super. 237 (App. Div. 1949). In the absence of an expressed intention to the contrary, in construing a will favor will be accorded to those beneficiaries who appear to be the natural or special objects of the testator's bounty. It will not be presumed that the testator intended to discriminate between the natural objects of his bounty and a construction affecting equality, and the natural objects of the testator's bounty will be favored. Byrne v. Byrne, 123 N.J. Eq. 6 (Ch. 1938).
In the light of the express provisions of the will of the testator, and especially that portion which permitted the sale of both the Moorestown and Nantucket houses and the use of the entire proceeds therefrom for the construction of a new home for the widow, it seems clear that the testator intended that the trustees should provide his widow with a home consistent with her financial and social position. He quite patently did not conceive that the Moorestown home would ever sell for so little a price as $22,000.
I am satisfied from the evidence adduced that it was his desire to furnish such a home for his widow. In the light also of both the retention of the Nantucket home, which has a value of $84,000, and the blanket powers of investment *542 given to the trustees, I conclude that they have the power and authority to invest the $43,000 requested by the widow in the home herein involved.
The trustees are therefore advised that they may purchase the above referred to residence and the seven acres of land for a total of $65,000.
Judgment will be entered accordingly.